[No. 13210.   Department Two.   April 21, 1916.]

M. CHURCHILL, *Respondent*, v. WILLIAM MILLER, *Sheriff of Stevens County, et al., Appellants.*[1]

HUSBAND AND WIFE—COMMUNITY DEBT—JOINT NOTE—LIABILITY OF WIFE.  A note signed by husband and wife reciting that "I or we promise to pay" etc., being a joint and several note under Rem. & Bal. Code, § 3408, subd. 7, binds the separate and community property of both husband and wife, although given for a community debt.

FRAUDULENT CONVEYANCES — VALIDITY — CHANGE OF POSSESSION. Under Rem. & Bal. Code, § 5291, providing that no bill of sale of personal property shall be valid as against existing creditors, where the property is left in the possession of the vendor, unless the bill of sale is recorded, etc., there was no change of possession of a piano and other goods, left by the vendors for two years in a room reserved for storage upon renting their house, where the tenant had no possession or control of the goods, and the only act of the vendee in taking possession was to notify the tenant that he had bought the piano.

PLEDGES—VALIDITY—CHANGE OF POSSESSION.  In order to pledge personal property for security of a debt there must be either a change

[1]Reported in 156 Pac. 851.

of possession or some instrument of record to evidence a constructive change of possession.

FRAUDULENT CONVEYANCES — VALIDITY — CHANGE OF POSSESSION. The giving of a bill of sale which was not recorded as required by Rem. & Bal. Code, § 5291, together with notice by the vendee to a third person not having possession, is not a sufficient change of possession to pass title.

EXEMPTIONS — NONRESIDENTS — STATUTES. · Nonresidents cannot claim exemptions from execution, in view of Rem. & Bal. Code, § 571, to the effect that the statute relating to exemptions from execution or attachment shall not be construed to exempt property of non-residents.

Appeal from a judgment of the superior court for Stevens county, Jackson, J., entered June 30, 1915, upon findings in favor of the plaintiff, in an action of claim and delivery, tried to the court. Reversed.

*Carey & Johnson,* for appellants.

*L. C. Jesseph,* for respondent.

HOLCOMB, J.—On March 1, 1915, appellant Miller, as sheriff of Stevens county, by virtue of an execution· for a deficiency under a personal judgment, issued to him upon a judgment in favor of appellant Lindsey and against Alma Kingsley Norton and George H. Norton, wife and husband, levied upon and seized one pianola piano, a box of oil paintings, one velvet carpet, and other personal property, as the property of the judgment debtors, and advertised to sell the same, under the judgment and execution, on March 11, 1915. Thereupon, on March 4, 1915, respondent filed the affidavit and bond required by Rem. & Bal. Code, §§ 573 to 577 (P. C. 81 §§ 891-899), and claimed and took possession of the pianola piano, oil paintings and velvet carpet which had been levied upon. Trial was had to the court without a jury and, after a hearing on evidence, the court entered a decree awarding the paintings and the carpet and 7-15 of the piano pianola to the respondent, and 8-15 of the piano pianola the court decided was subject to levy and sale.

Appellant Lindsey obtained a judgment against the Nortons on January 28, 1915, for a sum exceeding $2,400. This judgment was based upon a note and mortgage given by Mrs. Kingsley and her husband, by her as his attorney-in-fact. The note which the mortgage was given to secure, and upon which the judgment was based, was a joint and several note, reading, in part, as follows: "On or before five years after date, without grace, I or we promise to pay," etc. Such a note, under our statute, Rem. & Bal. Code, § 3408, subd. 7 (P. C. 357 § 33), is a joint and several note of the husband and the wife and, although for a community debt, binds the community and the separate estates of the husband and wife, whether the wife signed as maker or indorser, in view of the removal of the common-law disabilities of wives to bind their separate estates. *Northern Bank & Trust Co. v. Graves*, 79 Wash. 411, 140 Pac. 328; *Lumbermen's Nat. Bank v. Gross*, 37 Wash. 18, 79 Pac. 470. In this case, Mrs. Norton signed the note as a principal, and there can be no doubt as to her separate liability upon it. That being the case, the judgment would affect her separate and individual property, as well as her community property and the community or separate property of her husband. The property mortgaged to secure the note was sold under the judgment and foreclosure, leaving a deficiency on the judgment of something over $1,400, for which the execution was issued against the personal property in question.

At the trial, respondent introduced a bill of sale of the property claimed, made and executed in Vancouver, B. C., on February 8, 1915, signed only by A. Kingsley Norton, wife of George H. Norton. The bill of sale was never recorded as required by Rem. & Bal. Code, § 5291 (P. C. 203 § 7). It is contended by respondent that, though the bill of sale was not recorded so as to comply with the statute, possession was taken by respondent prior to the seizure under the execution. This is the principal question in the case: whether or not there was any change of possession from the

Nortons to respondent. The facts in the case show that the property had long been situated in a house belonging to the Nortons, or Mrs. Norton, at Kettle Falls, Stevens county, Washington, where the Nortons formerly lived; and that, about two years previous to the alleged transfer, the Nortons had removed to British Columbia, had rented their house in Kettle Falls, and retained one room therein for storage purposes, where this property was stored. It remained there all the time until seized by the sheriff under the execution. The name of the tenant of the Nortons was Williams. Respondent testified as to how he took possession as follows: "I have taken possession of the property by telling Mr. Williams that I had bought the piano. I do not think I mentioned the other property in the bill of sale." Mr. Williams testified that the goods, and all of them, had been left in his possession, and that respondent had never taken charge of them except by word and direction; that, on the 9th or 10th of February, respondent spoke to him relative to the piano; that he made no statement relative to the other goods at all. Williams further testified that he never at any time exercised any dominion over any of this property as agent, either for Mrs. Norton or for respondent. His possession must be construed, in the light of the facts, as being only a sort of general custody from having possession as tenant of the premises where the property was situated. But from these chattels and the room in which they were contained, he was excluded. He was, therefore, not a bailee.

Respondent makes some contention that the property was pledged to him two years before the levy of the execution, and was taken into his possession at that time, and was therefore not subject to sale. This cannot be sustained, for the reason that, at that time, there was neither actual nor symbolic delivery of possession to him under a pledge or in any other wise. If he had the property pledged to him for the security of a debt, there should have been either a change

of possession or some instrument placed of record to evidence the constructive change of possession. There was none.

It is next contended that the giving of the bill of sale by Mrs. Norton to respondent transferred the title to the property to him, and the possession he took of the property was a sufficient compliance with the statutes. It was held in *Sayward v. Nunan*, 6 Wash. 87, 32 Pac. 1022, a proceeding to foreclose an unrecorded chattel mortgage, that, where actual possession was not delivered, mere inspection and words between the mortgagor and the person in possession would not constitute a change of possession, especially such an open and notorious change of possession as is required in such a case; citing *Steele v. Benham*, 84 N. Y. 634, and *Siedenbach v. Riley*, 111 N. Y. 560, 19 N. E. 275. In *Steele v. Benham*, it was held that, to satisfy the statute, the possession must be actual, not merely constructive or legal; that actual and continued change of possession in the statutes means an open, public change of possession which is to continue and be manifestly continual by outward and visible signs such as render it evident that the possession of the judgment debtor has ceased. In *Crandall v. Brown*, 18 Hun 461, it was said that constructive possession cannot be taken under a chattel mortgage; that possession must be taken in fact, and that possession cannot be taken by words and inspection.

Under our statute, constructive possession could have been delivered by the recordation according to law of the bill of sale, or its symbolic transfer of title. No key giving the vendee exclusive access to the room and exclusive control of the goods was delivered to him. *Boothby & Co. v. Brown*, 40 Iowa 104. No such constructive possession of goods capable of being transferred actually and openly, as is here shown, satisfies the law. *Knox v. Fuller*, 23 Wash. 34, 62 Pac. 131, is cited as sustaining such constructive delivery of possession. That was a case involving only the question of whether and when title and possession passed as between the

parties. It was there held that the purchasers were given an independent key to a warehouse containing goods, and took the goods as they desired to use them, indiscriminately, from the entire shipment; that such acts constituted delivery and taking of possession and title in the purchaser. *Chezum v. Parker*, 19 Wash. 645, 54 Pac. 22, is cited also as sustaining a constructive delivery. In that case the question was, in the first place, whether or not there had been any transfer as between the plaintiff and his alleged vendor. It was held that there had been sufficient words and conduct on the part of his vendor to indicate a transfer of title; and in the second place, that the plaintiff took actual possession and control of the property. The cases are not in point here.

35 Cyc. 311, 312, is cited to the effect that the general rule is that the delivery must consist of an actual and continuous transfer of property. This rule must be applied, however, in view of the character and situation of the property and circumstances. Although such possession as a purchaser can reasonably take must be taken, it is not essential, as against creditors and subsequent purchasers, that there should be in all cases an actual manual delivery or a change of possession at the time of the sale, or immediately; citing also 5 R. C. L. 397. The rule is stated in 35 Cyc. 312, as follows:

"It has been held that it is sufficient as against creditors and subsequent purchasers if notice of the sale is given to the third person in possession, unless his possession is of such a character that it does not convey any notice to the world of the change of ownership, . . ."

In this case, it must be remembered that Williams, the tenant of the Nortons, had no control over this property and had never exercised or pretended to have any control. He was merely the tenant of the Nortons of their real estate and building, with the exception of one room which had been reserved by Mrs. Norton and in which this property was contained. The chattels in the reserved room were wholly in

the possession of the Nortons. They had been located in that place for two years in the same condition. The notice to Williams as a third person in charge of the property was, therefore, not a taking of possession. The property remained in the possession of the seller as much after such notice as it had been continuously theretofore. There was no change of possession. It was to prevent exactly such equivocal possession that the recording within ten days of the written transfer of title, or else actual transfer of possession, is required by law.

Whether the property was the community or the separate property of Mrs. Norton makes no difference in this case, for she is liable, both upon her community and her separate property, under our holding in *Northern Bank & Trust Co. v. Graves, supra,* and the statute heretofore cited.

There is some contention that, at any rate, the property could not be levied upon for the reason that it is exempt. This is answered by reference to Rem. & Bal. Code, § 571 (P. C. 81 § 887), to the effect that the statute relating to exemptions shall not be construed to exempt from execution or attachment the property, real or personal, of nonresidents. These parties were nonresidents at the time of the seizure, and had been for two years.

The judgment is reversed, and the cause remanded with instructions to enter judgment in favor of appellant, with costs.

MORRIS, C. J., MAIN, PARKER, and BAUSMAN, JJ., concur.