[No. 21972. Department One. December 16, 1929.]

EINAR ANDERSON, *Respondent-Appellant,* v. GEORGE C. GRANDY *et al., Appellants,* THE CITY OF SEATTLE, *Respondent.*[1]

[1]Reported in 283 Pac. 186.

548

*Farrell, Meier & Meagher* and *Lowden Sammis,* for appellants.

*Battle, Hulbert & Helsell* and *Weldon G. Bettens,* for respondent and cross-appellant.

*Thomas J. L. Kennedy* and *Thos. N. Swale,* for respondent City of Seattle.

PARKER, J.—The plaintiff, Anderson, commenced this action in the superior court for King county seeking recovery for personal injuries claimed by him as the result of the negligent driving of an automobile owned by, and driven for the joint use and benefit of, the defendants Grandy and his wife, and also as the result of the concurring negligent operation of a street car owned and operated by the city of Seattle. The cause proceeded to trial in the superior court, which resulted in a judgment of dismissal in favor of the city rendered, as a matter of law, by the court upon the

ground that the evidence failed to show any negligence on the part of the city, and also a verdict and judgment awarding to Anderson recovery against both Grandy and his wife. Anderson has appealed from the judgment of dismissal in favor of the city; and Grandy and his wife have appealed from the judgment rendered against them. The controlling facts, as we think the jury was warranted in viewing them from the evidence, and manifestly did view them, may be summarized as follows:

The public street in Seattle known as West Marginal way runs approximately north and south. It is, as platted, one hundred feet wide. Its surface, for a considerable distance north and south from the place in question, is not capable of use for vehicle traffic without being improved, and for all practical purposes the same may be said as to pedestrian use. Its improvements consist only of a board sidewalk three feet wide, along its west side; a paved vehicle roadway nineteen feet wide, the west edge of which is three feet east of the sidewalk; a single street car track, the west rail of which is about one and one-half feet east of the east edge of the pavement; and a planked roadway some fifty to sixty feet wide north and south, extending from the east edge of the pavement across the car track easterly into Idaho street which comes into Marginal way at approximately right angles from the east.

At about half past three o'clock during the day in question, Anderson was on a south-bound street car of the city's lines approaching the usual stopping place of such cars at the north edge of the planked roadway leading from the pavement east across the car track into Idaho street. The street car was not equipped so as to readily take on or let off passengers other than through a door on its right side near its front end, the car being what is commonly known as a one-man car.

The door on the left near the front end by the side of where the motorman sat, he being also conductor, was kept closed and could not be opened from the inside; the custom being to take on and let off all passengers through the right front door; this manifestly because it was regarded, as a general practice, the safer way, in view of the double track and other traffic conditions generally prevailing in the city, though at that particular point it might be considered safer to take on and let off passengers through the left front door where they would not alight on the paved roadway along which there was two-way vehicle traffic.

As the street car approached Idaho street, Anderson got up from his seat, went forward and made known to the motorman his desire to get off there, he being the only passenger intending to get off there. The street car was stopped at the usual place, the motorman opened the right front door, without leaving his seat, by some lever device, when Anderson stepped down onto the pavement. The extension of the body of the car and its step reached to a line outside the rail approximately perpendicular over and parallel with the east edge of the pavement. When Anderson stepped down onto the pavement, or possibly an instant before, he looked to the south along the pavement and saw, some two hundred feet away, an automobile approaching from that direction along the east side of the pavement, which, of course, was its proper place, in view of the two-way traffic on the pavement. He could not judge its speed, as it was coming practically directly towards him, and had no reason to suppose it was being unlawfully driven as to its speed. The automobile was being driven by Mrs. Grandy for the use and benefit of herself and husband, and was owned by them. Anderson intended to go forward and pass east in front of the car towards the place of

his employment on Idaho street, and started to do so, taking two or three steps towards the south, but before starting to cross the track, the street car started on its way, preventing him from crossing in front of it. He then stopped, standing still, close to the slowly moving street car, facing it, about one foot from it, with a view of going east after the car would pass him. When the car had moved less than its length, probably three-quarters of its length, Anderson was struck by the approaching automobile driven by Mrs. Grandy from the south, and thereby very seriously injured.

It was then broad daylight, and the driver of the automobile could plainly see Anderson by the side of the street car when two hundred feet or more away, just as Anderson could see the approaching automobile from the same distance. The automobile was being driven, when that distance away from Anderson, at thirty-five miles or more per hour, which, being within the city limits, was an unlawful rate of speed, and its speed did not appreciably diminish up to very near the time Anderson was struck. There was sufficient time for the driver of the automobile to avoid striking Anderson, after seeing his position, either by slowing the speed of the automobile or by proceeding along a course but a slight distance west of where he was standing. Anderson, when he alighted from the street car, had good reason to believe that he would be able to safely pass east across the track, either in front of or to the rear of the car, before the automobile would traverse the some two hundred feet distance it was away, or that it would safely stop or pass him while he was standing close to the street car, if its driver exercised due care, the place being the usual stopping place of the street car and at a street intersection. Other facts will be noticed as may seem necessary as we proceed.

■ We first notice Anderson's appeal from the judgment in favor of the city, dismissing the action as to it. It is contended in his behalf that the city was negligent, and the jury might so find, in failing to furnish him, as a passenger on the street car, a reasonably safe place to alight therefrom; that is, that, in view of the two-way traffic on the paved roadway, the city should have furnished opportunity for him to get off its car on the left side and thus avoid his getting off on the pavement on the right side where there was two-way vehicle traffic.

We cannot agree with this contention. We see no substantial difference between one-way traffic on a paved roadway and two-way traffic on the whole or a part of a paved roadway, in so far as danger to passengers getting on and off street cars stopping on a track immediately adjacent to or in the center of a paved roadway is concerned. It is well known that, at the vast majority of stopping places for street cars at street intersections, it is necessary and customary that passengers get on and off street cars directly from and to the surface of the vehicle roadway.

Counsel rely particularly upon our decision in *Tobin v. Seattle,* 127 Wash. 664, 221 Pac. 583. True, that was a case of danger attending a passenger while attempting to get on a street car from a paved roadway on the right side of the car, on which roadway there was two-way traffic, the opposite side of the street being unimproved, as in this case. A critical reading of that decision will disclose that there were there other conditions than the two-way traffic which rendered the place very dangerous, as was pointed out in our later decision in *Jones v. Seattle,* 144 Wash. 188, 257 Pac. 393, wherein the city was absolved from liability, as a matter of law, under a state of facts practically identical with those here shown, in so far

as the question of its own negligence was concerned. In the situation here in question, the city had no reason to anticipate but that traffic approaching this customary and proper stopping place from either direction, would exercise due care looking to the avoiding of injury to its passengers getting off or on its street cars.

■ It is further contended in behalf of Anderson that the motorman was negligent, and the jury might so find, in starting the car before Anderson had opportunity to pass to the east in front of it out of the path of the oncoming automobile. One answer to this is that there is not in this case any evidence to show that the motorman knew Anderson was intending to pass in front of the car to the east. Certainly, the motorman was not required to pay any attention to Anderson's intent to pass in front of the car until such intent should become manifest to the motorman. We conclude that the trial court did not err in deciding, as a matter of law, that the city was not negligent in any respect in the manner of the operating of its street car.

■ We next notice the appeal of Grandy and his wife from the judgment rendered against them in favor of Anderson. It is contended in their behalf that Anderson should not be awarded any recovery against them because of his own negligence contributing to his injuries, and that it should be so ruled as a matter of law. The theory of this contention is that Anderson was negligent in that he stepped off the street car directly in the path of the approaching automobile, with full knowledge of its approach. This theory, we think, is unsound as a basis for deciding the question of Anderson's negligence as a matter of law. We have seen that he saw the approaching automobile some two hundred feet away, that he had good reason to believe that he was getting off the car in a safe place, in so far as possible danger of being struck by the approach-

ing automobile was concerned; considering its distance away, its opportunity to safely and timely stop, or to safely pass him while he was at the side of the car, and his assuming, which he had a right to do, that due care in that behalf would be exercised by the driver of the automobile. We think there is but slight room for arguing that the question of Anderson's contributory negligence should have been by the court decided against him as a matter of law. We think that was for the jury to decide as a matter of fact. *Ridgeway v. Lewis,* 125 Wash. 316, 216 Pac. 355; *Demase v. Nemitz,* 144 Wash. 404, 258 Pac. 25.

It is contended in behalf of Grandy and his wife that the court's instruction expounding the law as applicable to the question of their negligence was prejudicial to their rights, in that there was not in those particular instructions any express language which would warrant the jury in denying Anderson recovery because of his contributory negligence. There were, however, other instructions given by the court, clearly and fairly giving them to understand that Anderson's own negligence, if shown to be a contributory cause of his injury, would prevent his recovery notwithstanding the negligence of Mrs. Grandy in driving the automobile. This, it seems clear under our decisions, made the instructions as a whole fair and without prejudice to the rights of Grandy and his wife. *Graham v. Allen & Nelson Mill Co.,* 78 Wash. 589, 139 Pac. 591; *Isitt v. Seattle,* 140 Wash. 161, 248 Pac. 379; *Wright v. Zido,* 151 Wash. 486, 276 Pac. 542.

It is contended in behalf of Grandy and his wife that the court erred to their prejudice in failing to instruct the jury that any award to Anderson for hospital and doctor's charges incurred by him, if any verdict be rendered in his favor, must be measured by the reasonable value of such charges necessarily in-

curred by him, the court failing to clearly so inform the jury in its instruction of such measure of such award. The instruction is subject to some criticism in this regard. However, this technical error, if it be such by reason of the somewhat general language of the instruction, was plainly not prejudicial to Grandy and his wife, because there was no controversy as to the reasonableness of such charges, in amount. Counsel for Grandy and wife, during the trial, in effect waived proof of the reasonableness of the amount of such charges, counsel for Anderson being thereby led to prove only the amount of the charges and the necessary service for which they were made.

It is finally contended in behalf of Mr. Grandy that, in any event, the judgment is erroneous in so far as it awards recovery against him in favor of Anderson. The language of the judgment, following usual recitals, is:

"It is hereby ordered, adjudged and decreed that the plaintiff, Einar Anderson, recover of and from the defendants George C. Grandy and Alma M. Grandy, his wife, and each of them, the full sum of $10,000, together with his costs and disbursements herein."

This was in accordance with the verdict. The theory of this contention is that Anderson's right of recovery, if any, is solely for the result of a tort committed alone by Mrs. Grandy, for which Mr. Grandy cannot be held liable. This, of course, depends upon the capacity in which Mrs. Grandy was acting in driving the automobile at the time Anderson was injured; that is, was she acting for herself alone or for both herself and Mr. Grandy jointly? This is determinable by the allegations in Anderson's complaint and the admissions in Mr. and Mrs. Grandy's answer, the evidence given upon the trial being silent on that question. In Anderson's complaint we read:

"At the time plaintiff alighted from the said street car, an automobile owned by said defendants George C. Grandy and wife, and operated for their use and benefit, was being driven by the defendant Alma M. Grandy north on the paved portion of said West Marginal way."

This is followed by allegations showing that Anderson's injury was caused by the automobile while being so driven. In Mr. and Mrs. Grandy's answer we read:

"Defendants . . . admit that an automobile owned by said defendants, George C. Grandy and wife, and operated for their use and benefit was being driven by the defendant, Alma M. Grandy, north on the paved portion of West Marginal way."

This, as shown by other facts appearing in the answer, plainly refers to the same automobile and the same driving by Mrs. Grandy as set forth in the complaint. This allegation of the complaint and admission in the answer is the only information that this record furnishes as to the nature of the ownership and the purpose for which the automobile was being driven by Mrs. Grandy. There is no statement in the complaint or answer that the automobile was the community property of Mr. and Mrs. Grandy, or that it was being driven in the interest of the community as such. So far as can be determined from this record, this case proceeded not upon the theory of community property or community liability, but upon the theory of joint ownership of the automobile and the driving of it by Mrs. Grandy in the common interest of herself and Mr. Grandy, apart from the fact that they happened to be husband and wife. So, it seems to us that we must now approach our problem from that viewpoint.

By Rem. Comp. Stat., § 6891 et seq., it is plain that married women have been completely emancipated in this state as to their property rights and as to their lia-

bilities flowing from contract or tort. In Rem. Comp. Stat., § 6904, we read:

"For all injuries committed by a married woman, damages may be recovered from her alone, and her husband shall not be responsible therefor, except in case where he would be jointly responsible with her if the marriage did not exist."

Viewing the relationship of Mr. and Mrs. Grandy here in question as that of partners, as we think it may be so viewed, for the purpose of determining their respective individual liability for Anderson's injury, we are of the opinion that our decision in *Dixon v. Haynes,* 146 Wash. 163, 262 Pac. 119, becomes decisive against Mr. as well as Mrs. Grandy. Referring to and quoting the language of the supreme court of the United States with approval, touching the individual liability of partners, we there said:

"Charles E. Haynes, being a partner, cannot be deemed a mere employee, or servant, of the firm. His acts and omissions, if done within the scope of the business of the firm, would be the acts or omissions of the firm, and of each partner.

" 'That as a general rule partners are all liable to make indemnity for the tort of one of their number, committed by him in the course of the partnership business, is familiar doctrine. It rests upon the theory that the contract of partnership constitutes all its members agents for each other, and that when a loss must fall upon one of two innocent persons he must bear it who has been the occasion of the loss or has enabled a third person to cause it. In other words, the tortious act of the agent is the act of his principals, if done in the course of his agency, though not directly authorized.' *Stockwell v. United States,* 13 Wall. (U. S.) 531."

Our decision in *Killingsworth v. Keen,* 89 Wash. 597, 154 Pac. 1096, relied upon by counsel in support of the contention that Mr. Grandy is not liable for Ander-

son's injuries, we think, is not out of harmony with our conclusion here reached. In that case the tort in question was exclusively that of the wife, wholly unconnected with any joint ownership or act done for the joint benefit of herself and husband. In *Cowart v. Lewis,* 151 Miss. 221, 117 South. 531, we have a decision involving almost exactly the conditions here involved. The husband and wife jointly owned an automobile which, being driven by the wife for the joint benefit of both, caused a personal injury for which both the husband and wife were held liable, merely as joint owners and joint actors. This, in its last analysis, is but a simple case of joint actors, in law, tortiously causing a personal injury to a third person, by the act of one, while acting for the use and benefit of both. We conclude that the trial court did not err in rendering judgment against both Mr. and Mrs. Grandy. We deem it appropriate to here observe that we are not deciding what conclusion we might have reached as to Mr. Grandy's separate liability for Anderson's injuries had Anderson's claim been prosecuted upon the theory of the automobile being community property, and being driven in the interest of the community, and proof made accordingly. That question is not here for decision.

The judgment in favor of the city denying Anderson recovery against it is affirmed. The judgment in favor of Anderson awarding him recovery against both Mr. and Mrs. Grandy is affirmed.

MITCHELL, C. J., TOLMAN, and MILLARD, JJ., concur.

BEALS, J. (dissenting)—In the affirmance of the judgment against appellant Alma M. Grandy and the community composed of herself and George C. Grandy, her husband, I concur. I dissent from the conclusion reached by the majority affirming the judgment against George C. Grandy individually.