[No. 27239. Department One. December 27, 1938.]

NON ETTA WERKER, *a Minor, by John Werker, her Guardian ad Litem, Respondent,* v. HARRY S. KNOX *et al., Appellants.*[1]

[1]Reported in 85 P. (2d) 1041.

454

■

*W. H. Abel* and *L. B. Donley,* for appellants.

*Vanderveer & Bassett,* for respondent.

ROBINSON, J.—The judgment appealed from in this case runs against Gertrude Knox, individually, and Harry S. Knox and Gertrude Knox, his wife, as a marital community. The matter is brought here upon a bill of exceptions, and the only question presented is whether, under the circumstances shown, the marital community is liable for the negligent tort of the wife.

The facts are simple, and not in dispute. The bill of exceptions, prepared by the appellants and duly certified by the trial court, reads, in part, as follows:

"The testimony and evidence for plaintiff sufficiently proved, and established, the following facts:

"(1) Non Etta Werker, plaintiff, is a minor, age fourteen years; John Werker is her father and was duly appointed, and qualified, and is acting as guardian *ad litem* under proper appointment by this court.

"(2) June 2nd, 1936, Gertrude Knox, defendant herein, parked a Nash automobile on 'G' Street between 4th and 5th Streets in the City of Aberdeen, Grays Harbor County, Washington, in such position, and condition, that said automobile without the intervention of any human agency, and in the absence of the said Gertrude Knox, broke loose, ran backwards down 'G' Street, ran across the westerly side of 'G' Street into a vacant lot, and there collided with, and ran over, Non Etta Werker, plaintiff, whereby she sustained personal injuries as alleged in the complaint, all without negligence on her part, to her damage in a substantial amount, later fixed by the verdict.

"The foregoing facts were substantially proved, and in addition the only testimony material to the case, and material on appeal, is the testimony of Gertrude Knox. She testified, and no other witness testified,

as to the circumstances under which she procured and used the automobile which broke loose as aforesaid and the purposes for which she used said automobile. Her testimony at the trial was: . . . "

Here follow eight pages of testimony, the substance of which, in so far as it is pertinent to the question under examination, is: Mr. and Mrs. Knox, at the time of the accident, had been married about eighteen years, and, for about two and one-half years prior to the accident, had lived in Washington, having moved here from the state of Illinois. Mr. Knox had brought from Illinois a Nash automobile, which he permitted his wife to drive at will.

On the day of the accident, Mrs. Knox had an appointment to call at the Highland Apartments to try on a sweater which a resident of the apartments was knitting for her. On her way, she stopped at the Rundell Motor Company to have the car greased and the oil changed. The proprietor offered her another Nash car, belonging to the motor company, for her use while her husband's car was being serviced. She accepted it and drove it to the vicinity of the Highland Apartments, and, while it was parked outside, the car broke loose and caused the injury complained of. A portion of her testimony is so relevant to the question raised on appeal that we quote it. While being examined as an adverse witness, Mrs. Knox testified:

"Q. Do you and Mr. Knox keep your departments very carefully separated? A. There is something that is separate; my own allowance is separated. Q. The rest of your property, of course, is not completely separated? A. No. I have no property. . . . Q. You went to the Highland Apartments to call on someone? A. I went on business, my own business. Q. Your own business? A. Yes. Q. Called on someone inside? A. Yes. Q. By the way, what was

your business? A. My business was, she was making a sweater for me and I went to have it tried on. . . ."

Later, on examination by her own attorney, Mrs. Knox testified as follows:

"Q. What was your purpose in visiting her? A. To try on this sweater. Q. Had you hired her to knit the sweater for you? A. Yes. Q. What was your arrangement as to paying her? A. I was going to pay her out of my own money. Q. You were going to pay her out of your own money? A. When it was finished."

Counsel for the parties are agreed that the exact question presented by the appeal has never been decided, at least in this jurisdiction.

■ It is contended on behalf of the community that its nonliability is determined by Rem. Rev. Stat., § 6904 [P. C. § 1426], which is as follows:

"For all injuries committed by a married woman, damages may be recovered from her alone, and her husband shall not be responsible therefor, except in case where he would be jointly responsible with her if the marriage did not exist."

But we think it clear, upon a mere reading of the section, that it merely establishes the nonliability of the husband as an individual. We are the more inclined to so construe it because, of recent years, the trend of the law has not been toward relieving the community from liability for the torts of its individual members, but has been quite definitely in the direction of finding ways and means of imposing such liabilities upon the community.

The advent of the automobile, as a common instrument of transportation, with its consequent train of negligent injuries and deaths, raised a number of legal problems, and, among them, the matter of finding adequate remedies. These heavy and fast-travel-

ing vehicles are frequently driven by minors, against whom a judgment cannot, ordinarily, be collected. In the community property states, it happened, more often than not, that a married driver had no separate property out of which a recovery could be realized. How were persons injured, or the personal representatives of persons killed, by the negligence of minor drivers, or of married drivers who had no separate property, to be afforded effective recovery? As a partial solution to the problem, the family car doctrine was originated.

This state was among the first to adopt and apply the family car doctrine. This was done in 1913 in the case of *Birch v. Abercrombie,* 74 Wash. 486, 133 Pac. 1020, 50 L. R. A. (N. S.) 59. It is said, in the opinion in *Allison v. Bartelt,* 121 Wash. 418, 209 Pac. 863, rendered in 1922, that, at that time, about fourteen or fifteen states had adopted the doctrine, and about an equal number had rejected it. What the balance of authority is at the time, we have not inquired. This court has never departed from it, but has applied it repeatedly in approving judgments against the community when the car which caused the injury was driven by the son or daughter of the family, or by either member of the community. There is nothing mysterious or revolutionary about the doctrine. The result is arrived at by applying to the facts principles of agency which have long been well-settled and established. *Hart v. Hogan,* 173 Wash. 598, 24 P. (2d) 99.

Although the family car doctrine is frequently invoked in cases holding the community liable for a tort committed by the husband, that result would generally follow from the mere fact that the husband is, by statute, the agent of the community. Rem. Rev. Stat., § 6892 [P. C. § 1433]. But, in such a case, there can

be no recovery against the community unless the husband was engaged in doing something which could be said to be beneficial to his principal, the marital community. *Bergman v. State,* 187 Wash. 622, 60 P. (2d) 699, 106 A. L. R. 1007. It is in those cases where the husband has caused a negligent injury through the use of an automobile that the tendency of the courts to go to an extreme limit to fix liability upon the community has been most clearly exhibited. For example, it has been held that a husband driving a car for his own pleasure is doing so for a purpose beneficial to the community; *Wicklund v. Allraum,* 122 Wash. 546, 211 Pac. 760; and so also, of a husband who was driving a car on a hunting trip; *Lloyd v. Mowery,* 158 Wash. 341, 290 Pac. 710; and, in each case, judgment was entered against the community.

In *King v. Williams,* 188 Wash. 350, 62 P. (2d) 710, where a husband was found guilty of a negligent injury, by careless driving, in taking persons, other than his wife, to a dance, the court, in order to hold the community liable, found:

"There was nothing unusual in his social engagement at the time of the accident with respect to community liability. Normal, legitimate recreational activities on the part of either spouse are not only not harmful, but they promote and advance the general welfare of the community, and the use of the community car for that purpose by one spouse, even if the other one is not present, is using it for the good of the marital community."

The appellant community contends that the family car doctrine cannot possibly apply in the instant case, because the car which caused the injury complained of was not the family car. It is argued that the chain of agency was completely broken when Mrs. Knox left the family car at the Rundell Motor Company and proceeded on her errand in a car belonging to

that company. It is said that she had no express authority from her husband, the statutory agent and head of the community, to drive a car belonging to a third party, and that no such authority can be implied.

An analogy is drawn from the opinion of this court in *Schnebly v. Bryson,* 158 Wash. 250, 290 Pac. 849, where a daughter had taken the family car to go to a dance. One of her friends persuaded her to leave the party temporarily and go with him in the car on an errand. It was held that, while on that trip, she was acting beyond the scope of the community agency, and that no recovery could be had against her parents.

By the use of a number of other cases, a strong and plausible argument is presented to support appellants' contention, but we need not decide the question raised, because the respondent does not rely on the family car doctrine, nor did she do so at any stage of the case. The respondent relies upon the general doctrine that a principal is liable for torts committed by an agent while acting within the scope of his authority. It is urged on behalf of the community that the principle is not applicable, because—it is said—under our law, the husband is the sole and exclusive agent of the community; and that, therefore, Mrs. Knox could not be its agent. But Rem. Rev. Stat., § 6906 [P. C. § 1431], provides as follows:

"The expenses of the family and the education of the children are chargeable upon the property of both husband and wife, or either of them, and in relation thereto they may be sued jointly or separately."

As counsel for the appellant community points out, this section does not, in terms, grant power to the wife to enter into contracts chargeable against the community; but we think it does so by inference. Surely, in an action by a grocer against a community for the

agreed price of groceries furnished on the sole order of the wife, the community could not defend upon the ground that this section gives the wife no authority to enter into such a contract on behalf of the community. The very case upon which the appellant community relies, *Bush & Lane Piano Co. v. Woodard,* 103 Wash. 612, 175 Pac. 329, a leading case in this jurisdiction, wherein it was held that a recovery could not be had against the community for a piano purchased by the wife, recognizes that a recovery could have been had if the piano had been a family necessity; and it was said, as early as 1892, *Littell & Smythe Mfg. Co. v. Miller,* 3 Wash. 480, 28 Pac. 1035:

"Doubtless the wife can create a charge against the community for necessary family expenses, and also such as may be necessary for the proper education of the children."

We think, then, since a wife may purchase necessaries on behalf of the community, she is acting as an agent of the community when making such purchases on its behalf, and it is entirely in accord with well-settled principles to hold that the community is liable for her torts while so acting. We quote from *Paderas v. Stauffer,* 10 La. App. 50, 119 So. 757, 120 So. 886:

"Their [the members of the community] failure to prove that she was on a mission for her separate benefit results in the inevitable conclusion that, as a matter of fact, she was on a community errand. Especially is this so where the evidence shows, as it does here, that she was shopping. If she was shopping for the household she was on a community errand, and if she was engaged in selecting clothes, or hats, or any of the numberless things a woman required for her own comfort or adornment, then, likewise, she was on a community errand, and in either such event she was just as much the agent of her husband as

head and master of the community as would have been the family chauffeur.

" 'Clothing of the wife paid for by the husband belongs to the community.'

"*Munch vs. Central Laundry*, 2 La. App. 123.

"See also, *Shield vs. F. Johnson & Son Co., Ltd.*, 132 La. 773, 61 So. 787.

"If, then, the wife's act in purchasing clothing, or groceries, or household necessities, could make the husband, as head of the community, liable for the purchase price, we fail to understand why the wife's negligence in driving the automobile to and from the place of purchase should not likewise be chargeable to the husband."

Assuming that the facts show that Mrs. Knox was on an authorized community errand, the theory of the respondent finds support in *Anderson v. Grandy*, 154 Wash. 547, 283 Pac. 186; *DePhillips v. Neslin*, 139 Wash. 51, 245 Pac. 749; *Geissler v. Geissler*, 96 Wash. 150, 164 Pac. 746, 166 Pac. 1119; *Milne v. Kane*, 64 Wash. 254, 116 Pac. 659, Ann. Cas. 1913A, 318, 36 L. R. A. (N. S.) 88.

It being established that Mrs. Knox may be regarded as acting as agent for the community, the case turns upon whether or not she was so acting, or whether she was exercising the right to make a personal contract given her by Rem. Rev. Stat., § 6902.

This question of fact the trial court resolved in respondent's favor. We have hereinbefore quoted all the evidence bearing upon the question. Mrs. Knox testified that she had no separate property. This raised a strong inference that the purchase of the sweater was a community transaction. Later, however, Mrs. Knox testified that her husband was accustomed to give her an allowance which she considered her own money, and added: "I was going to pay her out of my own money."

In view of the fact that Mrs. Knox testified that she had no separate property, it is difficult to assume that the allowance was an outright gift, especially in the absence of any evidence to that effect, other than her testimony that she considered the money allowed to her as her own. But, assuming that the allowance did become her separate property, the evidence that she intended to pay for the sweater out of that allowance falls short of proving that she had entered into a personal contract binding upon herself alone. The trial court found that Mrs. Knox was on a community errand. We find nothing in the record which would warrant us in setting that finding aside.

The judgment appealed from must, accordingly, be affirmed.

STEINERT, C. J., HOLCOMB, BLAKE, and MAIN, JJ., concur.

[1]Reported in 85 P. (2d) 1095.