[No. 32084. *En Banc.* March 10, 1953.]

PHILOMENE LAFRAMBOISE, *as Guardian ad Litem of Beverly LaFramboise, Respondent*, v. LOUIS SCHMIDT, *Appellant.*[1]

*Harry Hazel* and *I. J. Bounds*, for appellant.

*Tonkoff & Holst*, for respondent.

MALLERY, J.—The parents of six-year-old Beverly La-Framboise, desiring to go to Alaska, used the good offices of the Catholic Charities to place her in the custody of the

[1] Reported in 254 P. (2d) 485.

marital community of Louis and Blanche Schmidt. They paid the Catholic Charities thirty-five dollars a month, which, in turn, paid the Schmidts for the child's care. Louis Schmidt subjected the child to indecent liberties, and was criminally convicted therefor.

When the mother returned from Alaska and learned of these facts, she procured her appointment as guardian *ad litem* for her daughter, and brought this action for damages against Louis Schmidt.

The cause was tried to a jury, which returned a verdict against the marital community in the amount of seventy-five hundred dollars, upon which judgment was entered. The defendants appeal.

The defendants contend that the court erred in giving instruction No. 8, which reads:

"You are instructed that the defendant and his wife, Blanche Schmidt, constitute a marital community.

"If you find by a preponderance of the evidence that said community undertook to care for Beverly LaFramboise and received a consideration therefor, and if you further find by a preponderance of the evidence that the defendant, Louis Schmidt, during the period while said child was in the care and custody of said defendant and of the said community, did take indecent liberties with said child, then the community would be liable therefor."

In support of this assignment, the defendants contend that the act of Louis Schmidt was done as an individual person; that it was secret and concealed; that it was unforeseen and unforeseeable by the community as such, and was, therefore, not attributable to it. Furthermore, it is contended that, under the doctrine of *respondeat superior*, such an act was not within the course and scope of the husband's employment by the community.

To the defendants' contention with regard to the unforeseeability by the community of the wrongful act, it is sufficient to say that unforeseeability is an element of the doctrine of negligence, which is not involved in this case. The injury is not a result of negligence of any kind. The act here was a premeditated criminal act, done intentionally. The injury was, therefore, intentional, not negligent.

Both parties are agreed that the liability of a community for the torts of the spouses is placed upon the theory of *respondeat superior*, and that it is the law of this state that the community is not liable for the torts of the husband, unless the act constituting the wrong either (1) results or is intended to result in a benefit to the community or (2) is committed in the prosecution of the business of the community.

The community had engaged to take care of this six-year-old child. A child of that age has no discretion of her own of any kind which she can insist upon exercising. It follows that everything done with regard to her, by those having custody of her, is a part of her care with which the custodians are charged, and for which *they* are responsible. The criminal acts here in question were, therefore, a part of the care the child received from her custodians. They were done in the course of the community's business, and the community is, therefore, liable for them.

The instruction was correct, is supported by the evidence in the case, and was, therefore, not error.

The defendants complained that the form of the pleadings will not support a community judgment. It is true Louis Schmidt alone was named as defendant. This, however, is not determinative of the nature of the action, since an action against a married man is presumed to be against the community, and the wife need not be joined separately or independently, since she is represented in the action through the husband. *Merritt v. Newkirk*, 155 Wash. 517, 285 Pac. 442.

However, even were this not so, there would be no merit in the defendants' contention in the instant case, for the reason that counsel for Mrs. Schmidt injected the question of the nature of the action and the judgment into the action.

The answer to the complaint contained the following:

"And the said Louis Schmidt for and on behalf of the community composed of himself and Blanche Schmidt, his wife, denies each and every allegation contained in paragraphs two (2) and three (3) of the plaintiff's complaint."

The prayer of the answer affirmatively asked the following:

"That in the event any judgment be rendered in pursuance to said Complaint it be limited to this answering defendant in his sole and separate capacity and that it be specified in said judgment that no part of said judgment shall be an obligation against the community composed of said Louis Schmidt and Blanche Schmidt, and that no judgment herein rendered shall be a lien against any property heretofore or hereafter acquired by said community."

It must be remember also that the wife in this case appeared in the trial and testified. Counsel purported to represent her, as for instance, in making the following statements at different times:

"[p. 9]   Well, he is represented here. The community is represented here.   .   .   .   Well, the ordinary rule is that a judgment against the man would be presumed to be against the community, and on that basis we appeared on behalf of the community.   .   .   .   [p. 121] Your Honor, at this time I wish to make a motion for non-suit as applied to the community composed of these parties."

The defendants raised the issue of the nature of the action. It was resolved against them by the trial court and the jury. We find no error in the community liability provided for in the judgment.

The defendants contend that the judgment is excessive. We have held that substantial damages are proper in such a case. *Martin v. Jensen*, 113 Wash. 290, 193 Pac. 674, 198 Pac. 393.

The nature of this case does not permit an exact mathematical computation of damages. If they are to be substantial, rather than merely nominal, the law must frankly recognize that they lie in the realm of opinion. We are not prepared to find that the verdict in the amount of seventy-five hundred dollars is excessive.

The judgment is affirmed.

SCHWELLENBACH, HAMLEY, and FINLEY, JJ., concur.

HILL, WEAVER, and OLSON, JJ., concur in the result.

GRADY, C. J. (dissenting)—I am in accord with the majority opinion except that part relating to the amount of the award made by the jury. I can also agree that the nature of this case does not permit an exact mathematical computation of damages. However, the statement that if damages are to be substantial, rather than merely nominal, the law must recognize that they lie in the realm of opinion, is too broad. I fear it may be thought we are adopting a rule that the opinion of a jury is without limitation in a case of this kind. I do not believe in the light of the record we can properly meet the claim of excessive damages by just saying we are not prepared to find a verdict of seventy-five hundred dollars is excessive if we have in mind that the damages to be allowed must be compensatory and not punitive.

At the time of the taking of the indecent liberties of which complaint was made, the child was of the age of approximately six and one-half years. She was seven years of age at the time of the trial, but lacked sufficient understanding to take an oath as a witness and did not testify, although under questioning by the trial judge she seemed to understand the difference between truth and falsity. The acts of appellant fell clearly within the term "indecent liberties." No physical injury to the body of the child was done. The effect upon her of the acts done was to cause her to be unstrung and nervous, to cry easily, to have dreams while sleeping, and an appearance of being afraid of appellant on occasions when she saw him. She had told her mother and others of the acts done by appellant, and the memory of them remained with her at the time of the trial.

There is nothing in the record to indicate that the child was of sufficient mental maturity to have a sense of shame or humiliation brought about by the acts of appellant. Her reaction seemed to be that of fright. The probability of her fright being overcome by the passage of a comparatively short time, if she is permitted so to do, is much greater than its existence continuing during the years to follow.

It is quite clear to me from a reading of the record and visualizing the reaction of the jurors to all they heard and

observed during the trial of the action, that they yielded to natural human impulses and sought to penalize the appellant in a monetary way rather than having carefully and dispassionately considered the question of damages from a strictly compensatory standpoint. This view is fortified when a comparison is made between some awards for serious bodily injury, or those made where the affected person can be said to have suffered humiliation and disgrace, and the award in this case based upon what the record discloses. It is my view that the award made was excessive.

In *Anderson v. Dalton*, 40 Wn. (2d) 894, 246 P. (2d) 853, we made reference to the fact that this court had early committed itself to the view that the doctrine of exemplary or punitive damages was unsound in principle, and that such damages could not be recovered except when explicitly allowed by statute. We also made reference to our cases in which damages have been regarded as excessive, but not necessarily involving passion or prejudice, and to those cases in which damages have been regarded as excessive and as having been given under the influence of passion or prejudice. The latter would include a situation where it was apparent that the feelings of the jurors engendered by the evidence had prompted them to award damages which would be excessive from a compensatory standpoint and were exemplary or punitive in character.

The judgment should be reversed and the cause remanded for the entry of an order granting a new trial on the question of the amount of damages only, unless within a time to be fixed by the court respondent files a written consent that judgment may be entered for the sum of thirty-five hundred dollars.

DONWORTH, J., concurs with GRADY, C. J.

---

April 14, 1953. Petition for rehearing denied.