[No. 33364. Department One. February 16, 1956.]

DAVID SMITH, by his Guardian ad Litem, OLIVER SMITH, Respondent, v. JOSEPH A. RETALLICK et al., Appellants.[1]

Patrick M. Steele, for appellants.

Peters & Witt, for respondent.

[1] Reported in 293 P. (2d) 745.

DONWORTH, J.—This appeal is primarily concerned with the community's liability for the husband's tort.

On the evening of June 24, 1954, defendant husband drove the community automobile south from Tacoma on the mountain highway to visit a friend who was then employed at a service station which was located at about 148th street. Retallick was alone in the automobile. Because the service station was on the left-hand side of the highway, he drove past to the next intersection, made a U-turn, and drove back, stopping at the station.

In making this U-turn, Retallick almost collided with a vehicle being driven by David Smith. Smith sounded his horn several times and shook his finger at Retallick. Retallick beckoned to Smith to stop and discuss the matter. Smith pulled off the highway and stopped his car about thirty feet ahead of Retallick's vehicle. As Smith walked back to the Retallick vehicle, Retallick came forward to meet him, and each accused the other of "darn near hitting me."

As the parties neared each other, Smith, a six-foot, one hundred fifty-five pound nineteen-year old, was shaking his index finger at Retallick. Retallick, twenty-four years old, five feet eleven inches tall, and weighing two hundred five pounds, approached with clenched fists and ordered Smith to get into his car and to drive away. When Smith declined this invitation, Retallick struck Smith a "right cross" with his clenched fist. That was the beginning and ending of the fight, but, as a result of the blow, Smith sustained multiple fractures of the cheek and upper jaw bone.

Thereafter Smith, by his guardian *ad litem*, commenced this action, seeking recovery of general and special damages for the injuries sustained. In its oral decision, at the close of the case, the court expressed the opinion that:

". . . the evidence I think establishes quite clearly, that aside from the anger which had been engendered between the parties because of the traffic mishap, that the plaintiff did not threaten or menace the defendant in any degree that would give him reasonable grounds to strike the blow in question."

Findings of fact and conclusions of law were made and a money judgment entered in favor of plaintiff "against the defendant, Joseph A. Retallick and Patricia Jean Retallick, his wife, and the community they compose," together with costs. From this judgment, defendants appeal.

Assignments of error Nos. 1 and 2 complain of the making of finding of fact No. 3, and of the denial of appellants' motion for nonsuit. The argument advanced in support of these assignments is that respondent provoked the assault by his conduct and threatening gestures, and that the blow was struck in self-defense. In disposing of this argument, the trial court said:

"The shaking of the finger; language exchanged in heat, regardless of who was right or wrong in a traffic situation, does not give one party or the other, the right to resort to physical force and violence."

Finding of fact No. 3 reads as follows:

"That suddenly, without cause, the defendant, Joseph A. Retallick, did advance and willfully and maliciously strike the plaintiff, David Smith, in the face, causing injuries as set forth below."

The evidence does not preponderate against this finding. In our opinion, there is no evidence in the record to support appellants' contentions on the matters of provocation and self-defense.

Finding of fact No. 4 reads:

"That the plaintiff did not threaten, menace, or make aggressive movements towards the defendant."

Since error has not been assigned to finding of fact No. 4, it must be accepted as a verity, and therefore the first two assignments of error are clearly without merit and do not warrant further mention.

Assignment of error No. 3 complains that the court erred in concluding, as a matter of law, that plaintiff was entitled to a judgment against the Retallick community. Finding of fact No. 6 reads:

"That at the time of the above incident in question [the battery], the defendant, Joseph A. Retallick, was engaged in driving the community automobile to the scene of the in-

cident. That the purpose of said trip was to visit with a certain Edward A. Kinzz. That said Mr. Kinzz was employed as an attendant in the service station where the above altercation took place. That the defendant's purpose was to visit with said Mr. Kinzz, and to enjoy his companionship. That both Mr. Kinzz and the defendant were school teachers, and were going to summer school together."

Conclusion of law No. 3 reads as follows:

"That at the time of the above assault, the defendant was acting for himself and his wife, and the community they compose, in that he was engaged in an activity which was intended to result in benefit of the community, and that he was engaged in the prosecution of the community business at the time of the above action, when it was committed, WHEREFORE, . . . Plaintiff is entitled to a Judgment against the defendants, Joseph A. Retallick and Patricia Jean Retallick and the community they compose, . . ."

The court reasoned that the community automobile and the traffic mishap were mere surplusage, because the cause of action was founded solely upon the tort of battery. With this conclusion we are forced to agree, but we cannot adopt the trial court's reasoning in holding the community liable for the husband's tort.

In discussing this matter, the court said that the tort of a spouse, with regard to community liability, must be placed in one of three categories. In one category are those torts which are clearly in derogation of the community, *i.e.*, the extracurricular activities of a husband in alienating the affections of another's wife. The second category is composed of those torts which are committed by a spouse for the protection or benefit of the community, *i.e.*, a fraud perpetrated in the management of the community business. Between these two extremes is the third or "neutral" category. The "neutral" category includes those acts of a spouse from which the community enjoys no obvious or apparent physical or financial advantage but from which the law presumes that the community derives certain benefits, *i.e.*, the recreation and pastimes of the spouse.

While there is much merit in the logic of the court's position, we are not at liberty to apply any such rule in this

case. In our opinion, the disposition of this appeal is controlled by the rule announced in *Newbury v. Remington,* 184 Wash. 665, 52 P. (2d) 312. The facts in that case are similar in all material respects to the case at bar. In discussing Newbury's contention that the judgment should have been entered against the community, this court said:

"The question of the liability of a marital community for the tortious acts of the husband was considered and the rule for its determination set out in the case of *DePhillips v. Neslin,* 139 Wash. 51, 245 Pac. 749, wherein, upon a discussion and review of the authorities, it was said:

" 'The controlling consideration is, was the tortious act of Neslin, the husband, committed by him in the management of the community property or for the benefit of the community? If so committed, the community must be regarded as having committed the act and thereby rendered itself liable therefor.' . . .

"Applying the rule to the present case, it cannot be said that the tort committed by the respondent grew out of or was connected with his management of the community property, nor was it for the benefit of the community—the tort was committed by him as an aggressor wholly beyond and without any such consideration." .

In that case, the denial of recovery against the community was affirmed.

The legal basis for holding the community liable for a tort committed by one member has been *respondeat superior.* As was said in *Bergman v. State,* 187 Wash. 622, 60 P. (2d) 699, 106 A. L. R. 1007:

"It is now the settled law of this state, that if the tortious act of the husband be committed in the management of community property or for the benefit of the marital community, such community is thereby rendered liable for the act. [citing cases.]

"But this rule is not based upon the mere fact of marital relationship. It is founded on the doctrine of *respondeat superior.* Under that doctrine, unless, in a given instance, it can be said that the husband was acting as the agent of the marital community, the community is not liable. *Day v. Henry,* 81 Wash. 61, 142 Pac. 439; *Schramm v. Steele,* 97 Wash. 309, 166 Pac. 634; *Olive Co. v. Meek,* 103 Wash. 467, 175 Pac. 33."

This rule was approved and applied in the unanimous *En Banc* decision of this court in *Furuheim v. Floe,* 188 Wash. 368, 62 P. (2d) 706.

The *Newbury* case has never been overruled or modified, nor has the legislature changed the law on this subject during the twenty years since that decision was announced by this court.

■ Therefore, applying the rule of *stare decisis,* on the authority of the *Newbury* case, we hold that it was error for the trial court to enter judgment against the marital community in the case at bar.

The judgment is reversed and the cause remanded, with instructions to enter judgment against defendant husband only.

The parties will pay their own costs on this appeal.

HAMLEY, C. J., SCHWELLENBACH, and OTT, JJ., concur.

FINLEY, J. (dissenting)—In a number of cases stretching over a considerable period of time, this court has been confronted with the problem of whether a marital community should be held liable for a tortious act (negligent or otherwise) of one of the members thereof. The decisions in these cases are somewhat lacking in consistency, to say the least. In the majority of the cases, it would appear that the community has been exonerated from liability. In others, the community has been held liable. Of the latter group of cases, it may be of some interest that significant emotional factors or overtones were present in the following cases: *Werker v. Knox,* 197 Wash. 453, 85 P. (2d) 1041; *McHenry v. Short,* 29 Wn. (2d) 263, 186 P. (2d) 900; *LaFramboise v. Schmidt,* 42 Wn. (2d) 198, 254 P. (2d) 485.

In the *Werker* case, *supra,* the wife, while driving the family or community automobile, stopped at a garage to have the car repaired while she was on her way to inspect or try on a sweater which was being knitted for her. She left the community car at the garage, and, driving another automobile borrowed temporarily from the garage, she proceeded on her errand. At her destination, she parked and

left the borrowed car. Subsequently it ran backwards down a street on to a vacant lot, and there injured a *fourteen-year*-old girl. In the course of the opinion, the court referred to Rem. Rev. Stat., § 6904, which reads as follows:

"For all injuries committed by a married woman, damages may be recovered from her alone, and her husband shall not be responsible therefor, except in case where he would be jointly responsible with her if the marriage did not exist."

As to the above statutory provision, the court said:

"But we think it clear, upon a mere reading of the section, that it merely establishes the nonliability of the husband as an individual. We are the more inclined to so construe it because, of recent years, the trend of the law has not been toward relieving the community from liability for the torts of its individual members, but has been quite definitely in the direction of finding ways and means of imposing such liabilities upon the community."

In the concluding paragraph of the opinion, the court stated:

"The trial court found that Mrs. Knox was on a community errand. We find nothing in the record which would warrant us in setting that finding aside."

Suffice it to say, the marital community was not exonerated from liability, but was held liable for the tort (negligent act) of the wife.

In *McHenry v. Short, supra,* the defendant husband of a marital community *maliciously assaulted and inflicted fatal injuries* upon an individual while he, the husband defendant, ostensibly was evicting the individual from real property of the community. The court took the view that the tortious act of the husband was not one entirely separate and apart from his character as agent of the community, and that the tort was not one for which he alone was chargeable. The court referred approvingly to the above quotation from *Werker v. Knox, supra,* and, in the concluding paragraph of its decision, stated:

" 'For ways and means of imposing' liability upon the marital community in this instance, nothing more is necessary than to recognize what, in our opinion, the evidence demonstrates and what the trial court found, namely, that

the assault was committed by Fred Short acting either in the management of community real property or else in the furtherance of the community's business of caring for another's property."

In the case of *LaFramboise v. Schmidt, supra,* the parents of a six-year-old girl, while on a trip to Alaska, left her— seemingly under ideal circumstances—in the custody of a marital community. The parents paid thirty-five dollars per month to the community for the care of the little girl. The husband of the custodial community took criminally indecent liberties with the child. In this civil action, the jury rendered a verdict of seventy-five hundred dollars against the community for the injuries to the little girl. On appeal, the community contended that the criminally indecent acts of the husband were done by him as an individual; that they were secret, surreptitious, and that they were unforeseeable by the community, and, consequently not attributable to it. It was further contended that, under the doctrine of *respondeat superior,* the criminally indecent acts were not within the course or the scope of the husband's employment by the community. The court, *sitting En Banc,* stated:

"To the defendants' contention with regard to the unforeseeability by the community of the wrongful act, it is sufficient to say that unforeseeability is an element of the doctrine of negligence, which is not involved in this case. The injury is not a result of negligence of any kind. The act here was a premeditated criminal act, done intentionally. The injury was, therefore, intentional, not negligent.

"Both parties are agreed that the liability of a community for the torts of the spouses is placed upon the theory of *respondeat superior,* and that it is the law of this state that the community is not liable for the torts of the husband, unless the act constituting the wrong either (1) results or is intended to result in a benefit to the community or (2) is committed in the prosecution of the business of the community.

"The community had engaged to take care of this six-year-old child. A child of that age has no discretion of her own of any kind which she can insist upon exercising. It follows that everything done with regard to her, by those having custody of her, is a part of her care with which the custodians are charged, and for which *they* are responsible. The crim-

inal acts here in question were, therefore, a part of the care the child received from her custodians. They were done in the course of the community's business, and the community is, therefore, liable for them."

In *King v. Williams*, 188 Wash. 350, 62 P. (2d) 710, the court stated:

"Respondent E. C. Williams took dinner on the evening in question with friends, and, on leaving in his automobile, accidentally met two employees of his business firm. They decided to go to a dance, and, on the way, his negligent driving caused the collision out of which the actions arose. Mrs. Williams was not with her husband at the time of the collision.

"The sole question in the case is whether the community consisting of Mr. and Mrs. Williams is liable for his negligence in driving the automobile.

"There was nothing unusual in his social engagement at the time of the accident with respect to community liability. Normal, legitimate recreational activities on the part of either spouse are not only not harmful, but they promote and advance the general welfare of the community, and the use of the community car for that purpose by one spouse, even if the other one is not present, is using it for the good of the marital community. *Birch v. Abercrombie,* 74 Wash. 486, 133 Pac. 1020, 50 L. R. A. (N.S.) 59; *Wicklund v. Allraum,* 122 Wash. 546, 211 Pac. 760; *Lloyd v. Mowery,* 158 Wash. 341, 290 Pac. 710.

"Granting the motion for judgment in favor of respondents as a marital community, notwithstanding the verdict, constituted error. The cause is reversed, with directions to enter judgment against E. C. Williams and his wife as a marital community, in addition to judgment against him individually."

I can see no *significant* distinction either in fact or in principle between the instant case and those cases referred to herein in which liability was upheld or imposed against a marital community for tortious conduct of one of the individual members thereof. In the instant case, the majority opinion points out that the trial court finding of fact No. 6 states:

"That at the time of the above incident in question [the battery], the defendant, Joseph A. Retallick, was engaged in driving the community automobile to the scene of the

incident. That the purpose of said trip was to visit with a certain Edward A. Kinzz. That said Mr. Kinzz was employed as an attendant in the service station where the above altercation took place. That the defendant's purpose was to visit with said Mr. Kinzz, and to enjoy his companionship. That both Mr. Kinzz and the defendant were school teachers, and were going to summer school together."

It is further pointed out in the majority opinion that the trial court's conclusion of law No. 3 reads as follows:

"That at the time of the above assault, the defendant was acting for himself and his wife, and the community they compose, in that he was engaged in an activity which was intended to result in benefit of the community, and that he was engaged in the prosecution of the community business at the time of the above action, when it was committed, WHEREFORE, . . . Plaintiff is entitled to a Judgment against the defendants, Joseph A. Retallick and Patricia Jean Retallick and the community they compose, . . ."

I do not think that the evidence in the record clearly preponderates against the above finding No. 6 of the trial court; furthermore, I disagree with the view taken by the majority that the trial court's conclusion of law No. 3 was erroneous.

The foregoing would seem to lead to an affirmance of the result reached in the case at bar by the trial court. However, an affirmance would mean that the entire community would be liable for the judgment in the sum of twenty-one hundred dollars, and I have some reservations (discussed hereinafter) as to such a result.

I de Funiak's Principles of Community Property 516, § 181, states:

"It was provided in the Spanish law by statute of long standing that neither spouse was liable to lose his or her separate property or his or her half of the community property on account of any delict which the other spouse might commit."

And at page 518, it is further stated:

"It is at once apparent from the foregoing that the principles of the Spanish community property system are entirely at variance with the principles of the English common law which, instead of considering each spouse liable only for

his or her own torts, imposed liability on the husband not only for his own torts but also for the tortious acts of the wife. In the English common law such principles are attributable to the fact that the wife's identity as a person merged into that of her husband so that any tortious acts of hers were his acts, and the fact that title and possession of all marital property from which recovery could be had were in the husband. But in the Spanish community property system this situation did not exist, since not only was the wife viewed as a separate person in her own right but also she had, or could have, her own separate property and owned an existing half share in the community property. Accordingly, she could be held responsible for her own wrongful acts and compensation recovered therefor from her own property or property interests. No property of the husband, either his separate property or his share of the community property could be made liable for the wife's delict."

Under the circumstances where the property of a marital community consists of a home or other jointly used property, some hardship could undoubtedly be inflicted upon the innocent, nonacting spouse by a rule of law comparable to that of the Spanish community property system, in that a sale of the community home or other property used by the community might be necessitated in order to subject the community interest of the offending (tort-feasor) spouse to liability. However, where the tortious conduct of one member of a marital community causes injury to an innocent third party, the offending spouse has no separate property and any realization of damages against what may be substantial interests in community property is prevented by a positive rule of law expressed in judicial decisions, hardship is also inflicted upon the injured and innocent third party. I think that the result in the latter instance is both unjust and intolerable. Tort-feasors who are not financially responsible—i.e., those who have no property whatsoever, or its value is within the amount exempt from execution by statute—constitute a sufficiently large class immune from civil liability for their wrongful acts. I can see little justification for increasing the class by the addition of those individuals whose property interests may run into thousands of

dollars, but whose interests are in community property. In other words, a wrongdoer (tort-feasor) should not in effect be allowed to escape from civil liability for his wrongful acts simply because he has no assets except community property. In considering the conflicting interests and the possible imposition of hardships which might result one way or the other, I am convinced that the policy of the Spanish community property law offers substantially the most reasonable and just solution of the problem, and that it should become the prevailing rule of law in this jurisdiction with respect to the liability of a marital community for the tortious acts of one of the members thereof.

In *McDonald v. Senn*, 53 N. M. 198, 212, 204 P. (2d) 990, 10 A. L. R. (2d) 966, the supreme court of New Mexico reviewed Washington and California decisions regarding a marital community's liability for a tort of one of the spouses, stating:

"It is the rule in this state that we should look to the Spanish-Mexican law for definitions and interpretations affecting our community property statutes. . . .

"While the Spanish-Mexican law did not provide for damages for all classes of common law torts, *it did provide for the judicial segregation of the community property* so that the moiety of one spouse could be applied to damages or forfeited for his or her 'delito', a term applicable to both a criminal offense and a civil wrong." (Italics mine.)

In those Washington cases where a marital community has been held liable, and in those where immunity has been allowed, the results have been brought about or determined by *judicial decision,* largely without reference to legislation; that is, without pertinent and specific action ever having been taken by the legislature regarding the specific problem. (*Cf.* 10 A. L. R. (2d) 989, § 2.) Consequently, passing the buck to the legislature does not seem to me to be a very strong argument in support of the result reached in the majority opinion. In other words, where a substantive rule of law (a) is developed through judicial decision or precedents, and (b) it is not in an area of law such as that applicable to negotiable instruments where permanence, cer-

tainty and consistency are most important, and (c) the particular rule of law is supportable mainly by argument as to its antiquity, but the dictates of reasonableness, equity, and justice appear to be to the contrary, I think it is appropriate and a very good time to look the apparently applicable precedents squarely in the eye, and that an effort be made to develop a rule by *judicial decision* that will be more in accord with generally acceptable standards of justice, equity and reasonableness. To me, reasoning along this line seems more compelling in the instant case than legal argument emphasizing the antiquity of judicial precedents which may be said to be involved. Under some circumstances, there is of course considerable precedent for a departure from precedent, or *stare decisis*. In *Schramm v. Steele*, 97 Wash. 309, 166 Pac. 634, we said:

"The following often quoted language of the supreme court of Indiana seems peculiarly pertinent:

" 'Much as we respect the principle of *stare decisis*, we cannot yield to it when to yield is to overthrow principle and do injustice.' "

I think the instant case should either be affirmed, as indicated hereinbefore, or that it should be remanded for further proceedings to make the judgment effective against the husband's one-half interest in the community property. To me, the latter result would be preferable.