[No. 1829.   Decided February 1, 1896.]

DORA E. POWELL et al., Respondents, v. F. M. PUGH,
    Sheriff of Spokane County, Appellant.

COMMUNITY PERSONAL PROPERTY — LIABILITY FOR HUSBAND'S DEBTS.

Under the statutes of this state, the community personal prop-
erty can be sold on execution to satisfy a judgment against the hus-
band for his separate debt.   (Gordon, J., dissents.)

Appeal from Superior Court, Spokane County.—
Hon. Norman Buck, Judge.   Reversed.

Samuel R. Stern, for appellant.
Blake & Post, for respondents.

The opinion of the court was delivered by

Scott, J.—The respondents were husband and wife,
and the husband was engaged in the grocery business
in this state, the stock of groceries being the commu-
nity property of the parties.   The appellant, as sheriff
of Spokane county, levied upon said stock under an
execution issued upon a judgment which was the sepa-

rate debt of the husband, and this action was instituted by the respondents to enjoin the sale of the property. Judgment was rendered in their favor, permanently enjoining the sale thereof, and this appeal was taken therefrom.

The question to be decided is as to whether the community personal property can be sold to satisfy the husband's separate debt. Under our law the husband has the absolute control, management and disposition of the community personal property; as much so as of his separate property, excepting that he cannot devise more than one-half thereof. He has no such control or right of disposition as to the community real estate, and for that reason we have held that the community real estate cannot be sold for his individual debts. In this particular the laws of this state are different from those of the other states where community property laws relating to husband and wife are in force. With respect to personal property, however, our laws are substantially the same, and for that reason there is no ground for laying down a different rule as to the disposition of the community personal property. The husband, having the absolute power to dispose of it, may sell it to satisfy his individual debt and pass a good title. This being so, we see no reason why it may not be sold under an execution issued to enforce collection of that individual debt. If the title may pass by his act, there is no reason why it should not pass by operation of law under similar conditions. See *Andrews v. Andrews*, 3 Wash. T. 289 (14 Pac. 68).

It is further contended that the judgment of the lower court ought to be affirmed on the ground that it appears there is not enough of the community personal property to satisfy the community debts. But

we do not think the respondents are in a position to raise this point. None of the community creditors are questioning the transaction, and we are not called upon to express an opinion as to what rights or claims, if any, they could maintain in the premises.

Reversed.

HOYT, C. J., and DUNBAR and ANDERS, JJ., concur.

GORDON, J. (*dissenting*).—I am unable to bring my mind to the conclusion reached by the majority, and will state, as briefly as I can, the reasons for my dissent.

The reason advanced in the foregoing opinion for holding that the community personal property is liable for the individual debt of the husband, is that by statute he is given the management and control of such property, " with a like power of disposition as he has of his separate personal property." Gen. Stat., § 1399. I am aware that there have been decisions in some of the states in which the " community system " obtains, which seem to fully support the reasoning and conclusion arrived at by the majority in this case. I think, however, in view of the difference that exists in the statutory provisions of those states and our own, upon this subject, and the fact that this court in many cases involving other questions arising under the community laws of this state, has been constrained to adopt conclusions differing widely from those reached in such other states upon kindred propositions, that the holdings of such states upon the question arising in this case ought not to be considered of much binding authority.

It has been held in Texas that upon the death of the wife, the husband occupies the relation of a surviving

partner in an ordinary partnership. *Moody v. Smoot,* 78 Tex. 119 (14 S. W. 285).

At page 179 of his very excellent work on Community Property, Judge Ballinger says:

"In Texas the liability of the community, for the separate debt of either spouse contracted before marriage, seems to be placed upon the theory, that because the *income of the separate property falls into the community,* so also the charges against the owners thereof become community debts."

In this state the interest of the wife in the property acquired by the combined energies of herself and husband during the existence of the marriage, is something more than a mere expectancy, and therein we differ from California and Louisiana. *Packard v. Arellanes,* 17 Cal. 525; *Succession of McLean,* 12 La. An. 222.

Indeed, I am satisfied that there are many other essential points of difference between our " community system," as it exists by statute and as interpreted by the decisions of this court, and the system existing in any other state. It seems to me illogical to hold that because the husband has the authority to manage and dispose of such property, there is " no reason why it may not be sold under an execution issued to enforce collection of his individual debt." The husband is, in my view of the law, merely the statutory agent of the community. It would, of course, be nonsense to assert that because an agent has authority to sell the property of his principal, such property could be subjected to the payment of the agent's debt. Again, one member of a trading partnership has the lawful right to sell and dispose of the assets of the firm even to the extent of giving a bill of sale of the entire personal property. But the case has yet to arise

wherein it shall be held that because he possesses such power of disposition, he could sell or mortgage the same to satisfy his individual debt. Nor has it ever been held to be the right of a creditor to enforce the individual debt of such partner against the assets of the firm.

Still further, conceding that with reference to community personal property the husband is the statutory agent of the community, with authority to dispose of such property, that authority is to be voluntarily exercised. It presupposes the exercise of discretion and assent, and hence such a sale or disposition of the property is to be distinguished from an involuntary execution sale, wherein the consent of the debtor is wholly immaterial.

The statute confers authority, but does not couple with it any liability. Section 1406, Gen. Stat., of the chapter on "The Property Rights of the Husband and Wife," provides that:

"The rule of common law that statutes in derogation thereof are to be strictly construed, has no application to this chapter. This chapter establishes the law of this state respecting the subject to which it relates *and its provisions and all proceedings under it shall be liberally construed with a view to effect its object.*"

It seems to me to be anything but a "liberal construction" of the provisions of that chapter to hold that a debt contracted before the community existed may be enforced against the property of the "community," when in fact and in law the "community," as a separate legal entity, was a stranger to the contract out of which the debt arose. In an action upon such contract neither the "community" nor its members, as such, would be proper parties, and yet the

spectacle is presented of a judgment being enforced against the property of a "legal entity" based upon a debt to which it was a stranger, and in the action in which such judgment was recovered, it was not a party. It seems to me that our law in relation to the property rights of husband and wife is based upon the theory of equality, and proceeds upon the idea of keeping the community estate separate from the individual estates of the spouses. The rule anounced by the majority, however, destroys, as it seems to me, the idea of the equality of the spouses. The logic of the holding is that a husband can use the personal property of the community to improve and enhance his separate individual real property, in which the wife as the other member of the community has no vested right or interest. He may thus impoverish the community estate to enrich his individual estate, The entire community personal property becomes pledged (involuntarily) to the payment of any debt which the husband may see fit to contract, notwithstanding he may be improvident or profligate, and notwithstanding further that such debt is contracted for the exclusive benefit of his own separate estate.

In *Holyoke v. Jackson*, 3 Wash. T. 235 (3 Pac. 841), Judge GREENE, in speaking of the community system as it exists under our law, and of the powers and liabilities of its members, says, at page 239:

"In it [the community] the proprietary interests of husband and wife are equal. . . . It is *sui generis* — a creature of the statute. By virtue of the statute this husband and wife creature acquires property. That property must be procurable, manageable, convertible and transferable, in some way. In somebody must be vested a power in behalf of the community to deal with and dispose of it. . . . Its exemp-

tions and liablities as to indebtedness must be defined.
. . . Management and disposition may be vested
in either one or both of the members.  *If in one, then
that one is not thereby made the holder of larger proprie-
tary rights than the other, but is clothed, in addition to
his or her proprietary rights, with a bare power in trust
for the community."*

In *Brotton v. Langert,* 1 Wash. 73 (23 Pac. 688), this
court, construing § 1399, *supra,* which gives to the
husband the management and control of the com-
munity personal property, says:

· "This section discriminates in favor of one spouse
only so far as it is actually necessary for the transac-
tion of ordinary business."

Argument is unnecessary to demonstrate that the
holding in the present case is antagonistic to the con-
struction given to this section in *Brotton v. Langert.*
And further on in the opinion it that case, the court
says:

"Construing all the provisions of the chapter to-
gether, we cannot escape the conclusion that the object
of the law was to protect (so far as is consistent with
the transaction of ordinary business as we before ob-
served) one spouse from the misdeeds, improvidence
or mismanagement of the other *concerning property
which is the product of their joint labors.*  It is in the
nature of an exemption and, as has been well said,
'exemption laws are upheld upon principles of justice
and humanity.'"

With deference to my brethren, I think that the
judgment should be affirmed.