[No. 25485. Department One. June 6, 1935.]

CATHERINE NIMEY, *as Administratrix, Respondent and Appellant*, v. ZAHOI NIMEY, *Appellant and Respondent*, SPOKANE DRY GOODS COMPANY, *Garnishee Respondent*.[1]

[1]Reported in 45 P. (2d) 949.

*M. E. Mack* and *Nuzum & Nuzum,* for appellant Zahoi Nimey.

*Joseph A. Albi,* for respondent Catherine Nimey.

*Danson, Lowe & Danson,* for garnishee respondent.

MAIN, J.—This action was brought by Catherine Nimey, as administratrix of the estate of John Nimey, her deceased husband, for the purpose of bringing into the estate certain real and personal property, a bank account, and obtaining a judgment for damages on account of deceit. The cause was tried to the court without a jury, and at the conclusion thereof the court orally announced its decision.

The plaintiff caused a writ of garnishment to be issued and served upon the Spokane Dry Goods Company, a corporation. The defendant moved to quash the service or attempted service of the writ of garnishment, which motion was sustained. The plaintiff also caused a writ of attachment to be issued, which was by the sheriff levied upon certain real property. The defendant moved to quash this writ, which motion was denied. Upon the merits, the trial court made findings of fact, from which it was concluded that the plaintiff was entitled to certain relief.

The plaintiff appeals from the order quashing the writ of garnishment. The defendant appeals from the order refusing to quash the writ of attachment, and also from the judgment on the merits.

The facts, as found by the trial court, may be summarized as follows: John Nimey died August 7, 1933, leaving one son, Norman, aged five years, and Catherine Nimey, his surviving spouse. As already indicated, Mrs. Nimey was appointed administratrix of the estate of her husband, and qualified as such.

In October, 1923, John Nimey purchased a home in Spokane, paying therefor about the sum of twelve hundred dollars. April 15, 1927, John Nimey and Catherine Nimey, for a consideration of one dollar, deeded the home to Zahoi Nimey, the mother of John. At the time of the trial, the value of the home was between four and seven thousand dollars.

From July 16, 1917, John Nimey was employed by the Pullman Car Company as a foreman, receiving monthly wages ranging from about $125 to $175 a month. At the time of his death, he was receiving $157.50. Zahoi Nimey had been engaged in the business of peddling merchandise from house to house before her son was married in 1924. She had accumulated about four thousand dollars, which she had on deposit with the Spokane & Eastern Trust Company. Catherine Nimey was seventeen years of age at the time she was married. Zahoi Nimey lived with her son and his wife, was the family treasurer, and controlled the household and influenced her son and daughter-in-law in all business and social matters.

John Nimey and his mother had accounts in the Spokane & Eastern Trust Company since the year 1920. On or about October 7, 1932, there was an account in that bank, payable to Zahoi Nimey or John Nimey, which became available to Zahoi Nimey by the

signing over of the same by John Nimey, and all this money, which amounted to about ten thousand dollars, was later withdrawn from the bank. The money was withdrawn March 3, 1933.

John Nimey had an account in the Old National Bank of Spokane since October 6, 1920. October 8, 1932, he placed this account, in the sum of $1,856, in the name of Zahoi Nimey by John Nimey. John Nimey had no separate property; it was all community property of himself and wife.

The ten thousand dollars withdrawn from the Spokane & Eastern Trust Company was taken to the home where the parties lived, put in a tin can, and buried in the basement. At the time of John Nimey's death, Zahoi Nimey was in possession of his money and his private papers. Catherine Nimey did not know where John's money was, except that she knew that it had been buried in the basement by him and his mother. Zahoi Nimey informed Catherine Nimey after John's death that he had not left any money, and otherwise deceived her. Zahoi Nimey claimed that five thousand dollars of the funds that had been buried in the basement had disappeared, but, as the court found,

". . . defendant [Zahoi Nimey] has the said money in her possession, or that she knows where it is; defendant practiced concealment and was unfair to plaintiff and attempted to conceal her property and its location in court while on the witness stand."

In order to defraud Catherine, Zahoi Nimey caused her to believe that all the funds left by her husband, together with the funds belonging to herself, amounted to the sum of five thousand dollars, and, as the court found,

". . . persuaded her to sign an agreement attached to defendant's answer, and designated as Exhibit A herein, and influenced her to do so in the belief that she was obtaining all of her deceased husband's

property; that defendant misrepresented the extent of the property to plaintiff and that plaintiff was without the advice of, nor represented by, anyone at the time, and was distracted by the recent decease of her husband, and that she signed the agreement with the defendant; that plaintiff believed that she was obtaining all of her husband's property when she signed the agreement and believed that it was unnecessary to probate the estate of her husband and that after the signing of the said agreement the defendant appropriated the plaintiff's property.''

The agreement referred to was signed on Monday, August 14, 1933. On the Saturday previous, Zahoi had promised the father of Catherine that, on the following Monday, they would go to a certain lawyer in the city of Spokane for the purpose of having the estate of John Nimey probated. Instead of doing this, Zahoi Nimey took Catherine to her own attorney Monday, and the agreement was executed. By the agreement, the five thousand dollars taken from the basement by Zahoi Nimey after the death of her son was divided, two thousand dollars to herself, two thousand dollars to Catherine, and the balance, or one thousand dollars, to the minor son of John and Catherine, out of which one thousand dollars certain expenses were to be paid. Shortly after this agreement was signed, Catherine went to an attorney and the probate proceeding was instituted, and thereafter this action was brought.

By the judgment, Catherine Nimey was given, in addition to the two thousand dollars that she had under the settlement agreement, the sum of three thousand dollars in cash out of the money John Nimey had had in the Spokane & Eastern bank and which had been withdrawn and buried in the basement, the $1,864 in the Old National Bank, and certain personal property, or in lieu thereof the sum of $150. The court concluded that the evidence was not sufficient to establish a constructive trust in the real property.

■ Upon the merits, it is first contended that there was no evidence which warranted the court in rendering judgment against Zahoi Nimey on any of the causes of action. After reading the record, we are of the view that the decided weight of the testimony sustains the finding of the trial court. There can be no question but that, at the time the settlement agreement was drawn and signed, Catherine was grossly overreached. She had been for years under the domination of her mother-in-law; less than two weeks before she buried her husband. She had had no business experience. She relied upon the statement of her mother-in-law as to the amount of money which John had. At the time the agreement was executed, she was represented by no one. It is said, however, that she was in possession of facts which, if pursued by her, would have led to a discovery that fraud was being practiced. But we find that the evidence does not sustain such contention. The most that can be said was that Catherine had a suspicion that her husband left more money than was represented to her. The agreement having been induced by fraudulent representations, to the extent to which Catherine was damaged by such representations she had a right to recover.

■ It is said that there was a dispute between the parties, and that the accord and satisfaction were binding. But, conceding, without deciding, that there was a dispute, a settlement induced by fraud does not become an accord and satisfaction.

■ Catherine did not tender back the two thousand dollars which she received under the agreement, and it was unnecessary. While the general rule requires restoration before the settlement can be attacked, there is an exception to that rule. One injured by fraudulent compromise may, instead of restoring

the benefit received, retain what he has received and sue for whatever damages he has sustained as the result of the deceit by which the compromise was obtained; or, if he rescinds the transaction on the ground of fraud, he is not required to restore that which in any event he would be entitled to retain. 12 C. J. 357; 1 R. C. L. 201; *Heinrich v. Heinrich,* 2 Cal. App. 479, 84 Pac. 326. It follows that Catherine was not required to tender back the money received as a condition precedent to her right to maintain this action.

As to the money in the Old National Bank, that was the community property of John and his wife. Changing the deposit from his name to that of Zahoi Nimey by John Nimey did not transfer to Zahoi Nimey the right to the account upon John's death. *Meyers v. Albert,* 76 Wash. 218, 135 Pac. 1003; *Daly v. Pacific Savings & Loan Ass'n,* 154 Wash. 249, 282 Pac. 60. This account rightly belonged to the estate.

If John did give or attempted to give to his mother the money drawn from the Spokane & Eastern bank, which was the community property of himself and wife, the attempt would be futile, because, while the husband has the management and control of community personal property, he does not have the right to make substantial gifts thereof without the consent of his wife. *Schramm v. Steele,* 97 Wash. 309, 166 Pac. 634; *Parker v. Parker,* 121 Wash. 24, 207 Pac. 1062. The trial court properly gave Catherine Nimey the account in the Old National Bank, and rightly rendered judgment for three thousand dollars of the money which came out of the Spokane & Eastern bank.

With reference to the garnishment and attachment, little need be said. Upon each, after the motions to quash were made, there was a hearing upon affidavits presented by the respective parties. These affi-

davits are not brought to this court as a part of the statement of facts. They appear only in the clerk's transcript. It has many times been held that such affidavits cannot be made a part of the record unless they are brought here either by a bill of exceptions or a statement of facts.

The copy of the writ of garnishment served upon the Spokane Dry Goods Company was not signed, either by the clerk of the court or his deputy, and gave no indication that the original writ bore the seal of the clerk. There is a presumption in favor of the ruling of the trial court in quashing the writ, and in the absence of what the showing was upon the motion to quash, there is no basis for disturbing the order.

As to the attachment, the record is in the same condition, and the same presumption attaches to the order of the court.

There is one question, however, here on the face of the record. The affidavit upon which the writ was based recites an indebtedness of $4,868.37. The bond was in the sum of three thousand dollars. The writ issued directed the sheriff to levy upon property not exempt from execution sufficient to satisfy a claim amounting to the sum of fifteen hundred dollars. The writ was executed by levying upon the title to the real property, the home. Notwithstanding the irregularities in the issuing of the writ, Zahoi Nimey was in no wise prejudiced thereby. There was a bond for three thousand dollars, the writ recited that the levy could be made to the extent of fifteen hundred dollars, and the levy was upon real property. Under the holdings in the cases of *Remington v. Fragulius,* 120 Wash. 563, 208 Pac. 65, and *Hazeltine v. Lyle,* 175 Wash. 395, 27 P. (2d) 716, the levy was good to the extent of fifteen hundred dollars.

The order quashing the garnishment will be affirmed.

The order refusing to quash the attachment will be affirmed. The judgment on the merits will be affirmed.

MILLARD, C. J., BEALS, TOLMAN, and GERAGHTY, JJ., concur.