[No. 37158.    Department One.    December 31, 1964.]

*In the Matter of the Estate of* HAZEL MARY SALVINI, *Deceased.**

*Reported in 397 P. (2d) 811.

*Butts, Samboni & Yates,* for appellant.

*Wright, Booth, Beresford & Anderson,* for respondent.

SHORETT, J.†—Hazel Mary Salvini died leaving a will revoking all prior wills but making no disposition of her property. Thus, as far as her property is concerned, she died intestate. She left surviving her only her husband, Pete Salvini, and her mother, Margaret Scanlon.

Certain real property known as the "store property" was listed in the inventory and the petition for distribution as community property which, under our laws of descent, would require that it be distributed to the surviving husband. RCW 11.04.050.

The decedent's mother, Margaret Scanlon, filed objections to the final report and petition for distribution, alleging that the store property was a separate property of decedent and should, under our law (RCW 11.04.020), be distributed one half to the surviving husband and one half to the mother.

The trial court found that the store property was community property and distributed it to the surviving husband. The decedent's mother, Margaret Scanlon, appeals.

The store property was formerly pasture land and owned by Charles V. and Jennie Klotsche. Charles V. Klotsche died February 10, 1950, leaving a will under which his property was left to his wife, Jennie. In this will, Hazel Mary Salvini was named executrix. Hazel Mary Salvini was known in her lifetime as Mary Salvini and we shall so refer to her in this opinion.

What we have called the store property was listed in the inventory in Charles Klotsche's estate and, before the probate of his estate was complete, a Mr. Gerritsen commenced negotiations to acquire or lease the then vacant store property for the purpose of building and operating a commercial store.

Jennie Klotsche was then about 90 years of age, and indicated her wish to give the property to Pete and Mary

---

†Judge Shorett is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

Salvini and, accordingly, on June 17, 1950, a warranty deed was prepared to accomplish this purpose. However, this deed was never executed because, as negotiations between the Salvinis and Mr. Gerritsen proceeded, it was learned that a lower rate of interest on a construction mortgage could be obtained if the property was in Mr. Gerritsen's name. Seeking to take advantage of the lower interest rate, the Salvinis and the Gerritsens agreed in writing (June 26, 1950) that title to the property would be conveyed to Howard Gerritsen and wife, who would place a mortgage on it, construct a building and then convey title to Pete and Mary Salvini, who would lease the property back to the Gerritsens for a term of years. On the same day, in fulfillment of the agreement, a deed was executed from Jennie Klotsche and Mary Salvini, as executrix of Charles Klotsche's estate, to Howard Gerritsen and wife.

The Gerritsens obtained a construction loan of $30,000 secured by two mortgages on the property. The Salvinis paid out $3,337.29 in community funds for various expenses in connection with the improvement of the property. When the store building was completed, the Gerritsens executed and delivered a deed to "Pete Salvini and Mary Salvini, husband and wife," who assumed the two mortgages which the Gerritsens had placed upon the property.

The evidence shows that Mary Salvini actively assisted in all the negotiations connected with the store property. It is also significant that, in 1958, she executed a will which specified her separate property, and the store property was not so listed. The Salvinis treated the property as community in their income tax returns, and paid taxes, insurance and repairs with community funds.

Margaret Scanlon's first contention is that the deed from Jennie Klotsche and Mary Salvini, as executrix of the estate of Charles Klotsche, conveyed only the bare legal title to the store property and that the equitable title remained in Jennie Klotsche and passed to Mary Salvini, who was the residual beneficiary under Jennie Klotsche's will.

We think the simple answer to this claim is that the facts demonstrate that the deed was given as a part

of the agreement between the Salvinis and the Gerritsens, and that Jennie Klotsche intended that a gift of her entire ownership be made to Pete and Mary Salvini. The round-about method of accomplishing her objective was chosen only because of the lower interest rates available to the Gerritsens. The deed to the Gerritsens was absolute, upon its face, and, there being no intent by the grantor to retain an equitable interest, the full title passed.

Next, the appellant argues that, even if the transaction divested Jennie Klotsche of both legal and equitable title, the gift to Pete Salvini and Mary Salvini, husband and wife, was made to them as co-owners, or tenants in common of the property, and is not community property. If this contention is correct, the store property would belong one half to Mary Salvini's estate as her separate property, and one half to Pete Salvini, as his separate property.

A decision on this point requires an examination of our community property statutes. RCW 26.16.010 provides:

"Property and pecuniary rights owned by the husband before marriage and that acquired by him afterwards by gift, bequest, devise or descent, with the rents, issues and profits thereof, shall not be subject to the debts or contracts of his wife, and he may manage, lease, sell, convey, en-cumber or devise by will such property without the wife joining in such management, alienation or encumbrance, as fully and to the same effect as though he were un-married."

RCW 26.16.020 provides:

"The property and pecuniary rights of every married woman at the time of her marriage or afterwards acquired by gift, devise or inheritance, with the rents, issues and profits thereof, shall not be subject to the debts or con-tracts of her husband, and she may manage, lease, sell, convey, encumber or devise by will such property to the same extent and in the same manner that her husband can, property belonging to him."

RCW 26.16.030 provides:

"Property not acquired or owned[,] as prescribed in RCW 26.16.010 and 26.16.020[,] acquired after marriage by either husband or wife or both, is community property. The

husband shall have the management and control of community personal property, with a like power of disposition as he has of his separate personal property, except he shall not devise by will more than one-half thereof."

Appellant says that a gift of real property to a husband and wife constitutes the husband and wife tenants in common. In support of this contention, we are referred to *Stockstill v. Bart*, 47 Fed. 231 (1891), where the following interpretation was placed upon our community property statutes, p. 234:

"In the second place, the law of this state does not create community property out of real property acquired by gift. There is no room for misunderstanding or misinterpretation of the statute. In plain words sections 2400 and 2408 declare acquisitions by gift after marriage to be separate property, and in language equally plain section 2409 excludes property acquired by gift in describing and defining community property. Hence Mrs. Wilkie, even if she had such intention, and if she had declared it at the time, could not, by making a gift to her parents, create community property, or change the nature of the property bestowed so that it should be, after the title vested in her donees, different in character from that given to it by the statute. We find in the community property law no impediment to the vesting of an estate in a married person, whether man or woman, in trust, nor to the acquisition by a man and his wife, as the separate property of each, of undivided interests in the same lot or parcel of land; but community property, being a creation of the statute, can exist only under the statute, and must answer the statutory definition of such property."

The case of *Bradley v. Love*, 60 Tex. 472 (1883), also supports appellant's view. However, the Texas law is complicated by a statute and interpretations which prohibit conveyances of separate property to the community. See *Kellett v. Trice*, 95 Tex. 160, 66 S.W. 51, and Huie, Commentary on The Community Property Law of Texas (Rev. ed) § 9, p. 28 (13 Tex. Civ. St.).

McKay, Community Property (2d ed.) § 260, p. 189, and Ballinger, Community Property § 57, p. 92, seem to accept the *Stockstill* interpretation without question.

Even though the *Stockstill* case, *supra*, interprets the

Washington statutes, state courts are not bound thereby and must make the ultimate decisions in this area. *United States Fidelity & Guaranty Co. v. Anderson Constr. Co., Inc.*, 260 F. (2d) 172.

The reasoning of the *Stockstill* case, *supra*, is severely criticized by Professor deFuniak in his Principles of Community Property, where he says:

"Compare Stockstill v. Bart, 47 Fed. 231, wherein the court declared that in Washington community property could only exist by virtue of statute and that under the statutory provisions property given to one spouse during the marriage was the separate property of that spouse, and that must be true even though the donor intended the gift to be for both spouses. *This represents a too literal interpretation of the statute without any knowledge of the principles of community property which the statute is designed to make effective.*" (Italics ours.) 1 deFuniak, Principles of Community Property § 69, p. 173 note 17.

■■ A consideration of textbook authority and basic principles leads us to the conclusion that the subject of the gift here became community property. We reject the interpretation placed upon the Washington statutes by the *Stockstill* case.

As is well known, our concept of community property comes to us from the Spanish law. The Spanish statutes are, of course, in no way binding upon us, but they may aid us in resolving the difficult problem of legislative intent. Professor deFuniak lists the following as the applicable Spanish statute:

"Everything the husband and wife may earn or purchase during union, let them both have it by halves; and if it is a gift of the King or other person, and given to both, let husband and wife have it; and if given to one, let that one alone have it to whom it may have been given. (Originally Law 1, Title 3, Book 3 of the Fuero Real, promulgated in 1255, and continued into the Nueva Recopilacion in 1567, as Law 2, Title 9, Book 5.)" 2 deFuniak, Principles of Community Property, p. 13.

Professor deFuniak properly states the effect to be given the Spanish statutes:

"Constitutional and statutory provisions of our community property states have been most careful to specify, particularly as to the wife, that property acquired by her during the marriage by gift, inheritance, devise or bequest shall be her separate property. These do nothing more, actually, than continue the well established principles of the Spanish community property system, but it is probable that their adoption or enactment resulted from the too frequent misconception of the Spanish community property principles and the mistaken idea, resulting from training in the English common law, that gifts or the like to the wife during the marriage, or at least half of them, would pass into the husband's hands if there were not explicit provisions relating thereto. *With or without these constitutional and statutory provisions, the principles of the Spanish law of community are equally applicable now, that is, that a gift, inheritance, devise or bequest to one spouse alone during the marriage is the separate property of that spouse, but if made to both spouses they both take it as community property.*" (Italics ours.) 1 deFuniak, Principles of Community Property § 69, p. 173.

To the same effect, see Daggett, The Community Property System of Louisiana, p. 16. See also, 15 Am. Jur. (2d), Community Property § 25, p. 839, where the rule is stated:

"Although property given to a husband and wife is usually considered to be community property, it may be shown that a gift to the husband alone was in trust for the use of the wife or that a deed of gift to the husband and wife jointly was intended to operate as a gift to the wife alone. . . ."

Furthermore, it should be remembered that "The policy of the law is in favor of community property . . ." *Volz v. Zang*, 113 Wash. 378, 383, 194 Pac. 409.

A gift to a husband and wife is a gift to the community under our statutes.

The judgment is affirmed.

OTT, C. J., HILL, HUNTER, and HALE, JJ., concur.