[No. 38666.   En Banc.   February 2, 1967.]

HOUSEHOLD FINANCE CORPORATION OF SIOUX FALLS, *Appellant*, v. TIMOTHY M. SMITH et al., *Respondents*.*

*Helsell, Paul, Fetterman, Todd & Hokanson, Charles H. Paul*, and *Alexander Wiley*, for appellant.

*Jager, Austin & Makus* and *Jerome L. Jager*, for respondents.

HILL, J.—July 17, 1963, the defendants, Timothy M. Smith and Mary M. Smith, his wife, while residents of South Dakota, for value received, executed and delivered to the plaintiff, Household Finance Corporation of Sioux Falls, a corporation, their promissory note whereby they made a promise to pay "jointly and severally" the sum of $816. It was agreed, as part of the note, that:

The construction, validity and effect hereof shall be governed by the laws of South Dakota.

*Reported in 423 P.2d 621.

Thereafter, the defendants became residents of Washington, and on June 10, 1965, the plaintiff obtained a default judgment in this state on said note in the amount of $747.33 and costs against Timothy M. Smith and Mary M. Smith, his wife, and each of them.

When the plaintiff, on the basis of its judgment, sought to garnish wages earned by the husband, the defendants, although not challenging the validity of the judgment, secured a decree adjudging that the plaintiff had no right to subject the community property of the defendants in this state to the enforcement of its judgment, which decree permanently restrained the plaintiff:

> from causing the levy of execution upon, attaching, garnisheeing, or in any other way subjecting said community property of defendants in the State of Washington to the enforcement of said judgment.

From this decree and restraining order the plaintiff appeals.

The basis for the decree and restraining order was that Washington is a community property state and that community property was something not contemplated under the law of South Dakota, and, consequently, the defendants could not have intended by their joint and several obligation in South Dakota to make the then unknown and subsequently acquired community property in Washington, including wages, subject to attachment under a judgment on the note.

This is another of the frustrating experiences of out-of-state creditors attempting to collect obligations from debtors domiciled in Washington who interpose the claim that wages, or other property sought to be attached, constitute community property and are not subject to attachment because the debt is not a community obligation.

Two cases involving out-of-state creditors trying to reach community property of debtors domiciled in Washington are now pending in this court. In these cases, the claimed fallacious reasoning of the second *LaSelle* case[1] and our

---

[1] *LaSelle v. Woolery*, 14 Wash. 70, 44 Pac. 115 (1896).

constant adherence thereto[2] are again under heavy fire. However, the present case has distinguishing features which takes it without and beyond the ambit of the cases which have followed *LaSelle* and upon which the trial court relied.

In the instant case, both husband and wife signed the note on which the judgment was based. They each became jointly and severally liable for the entire debt. All the property which they owned in South Dakota, including the wages of either, could be reached to satisfy a judgment on the note. *LaDue v. Bird,* 51 S.D. 507, 215 N.W. 490 (1927) *Christian v. Boepple,* 42 S.D. 337, 175 N.W. 194 (1919); *Granger v. Roll,* 6 S.D. 611, 62 N.W. 970 (1895). Had they signed the same note in Washington, any property which they owned, separate or community including the wages of either, could be reached to satisfy a judgment on the note. *Churchill v. Miller,* 90 Wash. 694, 156 Pac. 851 (1916).

■ Unless the community is a juristic entity, the property of the community must be under the ownership of the husband and wife; and they both being jointly and severally bound to pay the note, their interest in the community property should be reached to satisfy the judgment based thereon.

We have denied that a community was a separate and distinct juristic entity, *Bortle v. Osborne,* 155 Wash. 585, 285 Pac. 425, 67 A.L.R. 1152 (1930); however, the exact nature of a community has been somewhat less than crystal clear. See *Great American Indem. Co. of New York v. Garrison,* 75 F. Supp. 811 (1948); *Stone v. United States,* 225 F. Supp. 201 (1963); *Britt v. Damson,* 334 F.2d 896 (1964). The community, like the Kingdom of Heaven, is "like unto" a number of things (see Matthew 13: 24-33), but seems to defy precise definition.

---

[2]The adherence continues through *Pacific Fin. Corp. v. J. Ed Raymer Co.,* 68 Wn.2d 211, 412 P.2d 120 (1966). Rather than again reviewing the particular issues involved in these cases, we would refer to the discussion in the *Raymer* case together with the majority and dissenting opinions in *Escrow Serv. Co. v. Cressler,* 59 Wn.2d 38, 365 P.2d 760 (1961).

■ Though we seemingly cannot precisely define what a community is, we are able with some certainty to say that it is not a device to defraud out-of-state creditors in cases where both husband and wife have signed a promissory note and created thereby a joint and several obligation outside the state of Washington, which would be enforceable against community property had it been executed in this state.

Our holding in the present case was clearly foreshadowed by our opinion in *Escrow Serv. Co. v. Cressler*, 59 Wn.2d 38, 365 P.2d 760 (1961).

In holding that a community obligation was not incurred when the husband alone signed a note for an Oregon financing institution, this court there said (p. 43):

> When a financial institution loans money, it dictates the terms of the contract upon which it will make the loan. . . .

> In the case at bar, the loaning institution knew that the borrower was married. His wife was not requested to join as a party in incurring the indebtedness under the Oregon law. By accepting the signature of the husband alone, the loaning institution chose to limit its remedy, in the event of default, to his actual business assets in Oregon and any separate estate he might own in Oregon or elsewhere. *The terms of the contract were not drawn to encompass the separate property of the wife or any property in which she had an interest in the state of Oregon or elsewhere.* The contract was a lawful one. Under the facts of this case, any hardship or injustice suffered by the financial institution was due solely to its failure to require the wife to join in the contract. If it can be said that the community became "enriched" by the money that the institution loaned to the husband, and which he lost in the Oregon venture, such an enrichment was not unlawful, but the result of legislative policy. (Italics ours.)

In the present case the financial institution did secure the signatures of both husband and wife on a note which, by express terms, was their joint and several obligation. We rephrase the italicized sentence in the quotation from the *Cressler* case to read: The terms of the contract were

drawn to encompass their separate property or any property in which they had an interest in South Dakota or elsewhere. This would include their interest in community property in Washington.

The restraining order entered herein is set aside, as is the decree determining that the plaintiff has no right to subject the community property of the defendants to the enforcement of a judgment based on their joint and several obligation.

The King County Superior Court will make and enter such order as the circumstances may require consistent with what we have said herein.

ALL CONCUR.