[No. 46715-3. En Banc. December 31, 1980.]

JOAN DEELCHE, *Appellant,* v. HARRY W.
JACOBSEN, ET AL, *Respondents.*

*Williams, Lanza, Kastner & Gibbs,* by *Joel D. Cunningham,* for appellant.

*Chambers, Marston, Hodgins, Shorett, Young & Gillingham,* by *Paul Gillingham,* for respondents.

*Daniel F. Sullivan, Ronald Bland, Frank Stubbs,* and *Donovan Flora* on behalf of Washington State Trial Lawyers Association, amici curiae.

STAFFORD, J.—The facts in this case are not disputed upon appeal. Mrs. deElche, her ex–husband and Mr. Jacobsen and his wife were socializing aboard the latter's 36–foot community–owned sailboat. Mrs. deElche decided to leave when the other three started drinking heavily. She went to bed aboard her ex–husband's boat which was tied up alongside the Jacobsens'. The others continued partying, which the trial court found to be community recreation. Later that night Mr. Jacobsen left his community–owned boat in an intoxicated state, went aboard the other vessel, and forcibly raped Mrs. deElche.

In the resulting civil case Mrs. deElche was awarded a judgment against Mr. Jacobsen separately. Since prior to the incident the Jacobsens had validly executed a community property agreement which converted all of their property to community property, Mr. Jacobsen had no separate

property. The judgment was thus uncollectible since under then–existing law community property was deemed exempt from judgments arising from separate torts. Mrs. deElche appealed, asking us to overturn the rule which immunizes Mr. Jacobsen's community property and to follow the trend announced in *Werker v. Knox,* 197 Wash. 453, 456, 85 P.2d 1041 (1938):

> [O]f recent years, the trend of the law has not been toward relieving the community from liability for the torts of its individual members, but has been quite definitely in the direction of finding ways and means of imposing such liabilities upon the community.

We feel her position has merit.

The history of the exemption of community property from separate tort judgments is informative. Initially *Brotton v. Langert,* 1 Wash. 73, 78, 23 P. 688 (1890), held community owned real property was exempt from a judgment arising from a tort "not incurred for the benefit of the community." *Stockand v. Bartlett,* 4 Wash. 730, 31 P. 24 (1892), made it clear a separate debt creditor could not sell community real estate to reach the debtor's one–half interest, but *Powell v. Pugh,* 13 Wash. 577, 43 P. 879 (1896), did allow recovery from community personal property. *Powell* was overruled, however, by *Schramm v. Steele,* 97 Wash. 309, 166 P. 634 (1917), and from that time on all community property has been exempt from separate tort judgments.

The community "benefit" necessary to impose liability has been broadly interpreted.[1] Torts arising out of the management of community property may lead to community liability. *See, e.g., Benson v. Bush,* 3 Wn. App. 777, 477 P.2d 929 (1970). Purely personal recreation has been held to be a benefit to the community. *See, e.g., Moffitt v. Krueger,* 11 Wn.2d 658, 120 P.2d 512 (1941) (wife drinking with friends); *see also King v. Williams,* 188 Wash. 350, 62

---

[1] Some commentators appear to think the concept of "community benefit" has been stretched too far. *See, e.g.,* W. DeFuniak & M. Vaughn, *Community Property* § 182 (2d ed. 1971).

P.2d 710 (1936). Driving the family car yielded community liability, *Birch v. Abercrombie,* 74 Wash. 486, 133 P. 1020 (1913), particularly when it involved a community errand, buying "necessaries" such as a sweater, *Werker v. Knox, supra.* The combination of the management rule, benefit rule, family purpose doctrine, and imposition of liability when one of the spouses has been engaged in legitimate recreational activity has meant that, in practice, the community with few exceptions has been found liable for all torts except "purely personal altercations" and alienation of affection–type suits. Cross, *Community Property Law in Washington,* 49 Wash. L. Rev. 720, 836 (1974) (hereinafter Cross). Normally only a slight connection with the community has been required. *But see Bergman v. State,* 187 Wash. 622, 60 P.2d 699, 106 A.L.R. 1007 (1936), where the husband burned down a community–owned business in an attempt to collect insurance money and liability was found to be separate only.

Too often the determination of whether the tort is separate or community has been based on distinctions without a difference. Originally there was a distinction between torts committed in public versus private employment, the former producing only separate liability. *See, e.g., Brotton v. Langert, supra.* This distinction was abolished in *Kilcup v. McManus,* 64 Wn.2d 771, 394 P.2d 375 (1964), however. Now distinctions more often are based on the ownership of property involved in the tort, which seldom has anything to do with the motivation of the defendant or injury to the plaintiff. *See, e.g., Newbury v. Remington,* 184 Wash. 665, 52 P.2d 312 (1935), in which an assault was held to be separate although it arose out of driving the community automobile while returning from recreational activities. Defendant and plaintiff were driving in the same direction; when plaintiff attempted to pass, defendant repeatedly blocked him, all the while making various gestures. Eventually defendant forced plaintiff off the road, left his automobile, and struck plaintiff with his fist. This was held to be a separate tort based on the following rationale.

> [T]he automobile was not used by respondent husband in striking and beating the appellant, nor was it in use at all by him at the time the assault and battery was inflicted by the respondent husband. He was away from the automobile at that time. The uncontested finding of fact is "that said defendant [A. D. Remington] *alighted from the automobile and went back* to plaintiff's automobile, etc.," striking and beating the appellant.

*Newbury,* at 668. Clearly, if defendant had struck plaintiff with the automobile, rather than with his fist, the community would have been held liable. The same result would have been reached had he stayed inside his auto rather than alighting. Yet, neither distinction is so great that they should ultimately determine whether plaintiff should or should not recover.

An analogous case decided the opposite way is *Benson v. Bush, supra.* There, defendant broke up a dog fight between his community–owned dog and that of his neighbors by spraying a chemical in the face of the neighbors' dog. Thereafter defendant became angered by the neighbor and, when the latter started to walk away, sprayed some chemical in his face also. This was held to be a community tort since defendant had not "launched upon an individual enterprise of his own which had no relationship to the community . . ." *Bush,* at 780. *See also McHenry v. Short,* 29 Wn.2d 263, 186 P.2d 900 (1947) (community held liable for deadly assault arising from defense of community property); *Blais v. Phillips,* 7 Wn. App. 815, 502 P.2d 1245 (1972) (community held liable for assault occurring after a trial concerning community property).

On the other hand, the tortious act in *Edmonds v. Ashe,* 13 Wn. App. 690, 537 P.2d 812 (1975), was done expressly to benefit the community but only separate liability was found. There, the husband held some close friends hostage in an attempt to force a reconciliation with his wife. In a scuffle one of the friends was killed as was the husband. Although the Court of Appeals clearly had a difficult time distinguishing other cases, they felt they could not hold that the husband was acting in a way designed to benefit

the community. There, however, there was no compelling reason to hold the wife's half interest in the community property liable. Since the husband had died, his half of the property was liable for any separate judgment and plaintiff was able to recover.

Other cases which found community liability upon tenuous contacts with the community, distinguished by *Edmonds,* include *LaFramboise v. Schmidt,* 42 Wn.2d 198, 254 P.2d 485 (1953), where the husband committed indecent liberties upon a child staying in their home, and *Moffitt v. Krueger, supra,* where a wife permitted a male friend with whom she had been drinking to drive the community automobile and his negligent driving caused an accident. In the cited cases the only way plaintiff could recover was a determination that the community was liable.

Clearly the current rule has yielded illogical, inconsistent and unjust results. When logically and equitably it was the tort–feasor alone who should bear the costs of his actions, the courts have been given only two choices—either impose one–half of the liability upon the property of the nontort–feasing spouse, even though that spouse had nothing to do with the tort, or force the innocent victim to bear all damages produced by an acknowledged tort–feasor if that tort–feasor, even though solvent, had only community property. The tort–feasor could hardly lose; absent the ownership of separate property he or she could be held liable to pay either only half the judgment or nothing at all.

The avowed purpose of this rule was to protect the community entity from the "misdeeds, improvidence or mismanagement" of the miscreant spouse. *See Brotton v. Langert, supra* at 80. Clearly the early cases were based on the "entity" theory of the community. They speak of the community property statutes "breath[ing] into legal existence a distinct and original creation . . . termed a 'community.'" *Brotton,* at 78. The property was said to be "not the property of either of the parties, but of the community . . ." *Stockand v. Bartlett, supra* at 731. As said in

*Schramm v. Steele, supra* at 315, "it is the statutory entity—the community as such—which owns the property."

Later cases have made it clear, however, that the community does not exist as a separate and distinct juristic entity, and that the property of the community is under the ownership of the husband and wife. *Household Fin. Corp. v. Smith,* 70 Wn.2d 401, 403, 423 P.2d 621 (1967). As stated in *Bortle v. Osborne,* 155 Wash. 585, 589-90, 285 P. 425, 67 A.L.R. 1152 (1930):

> By the community property law of this state, Rem. Comp. Stat., §§ 6890-6906, the legislature did not create an entity or a juristic person separate and apart from the spouses composing the marital community. The legislature did nothing more than classify as community property—designate the character of certain property as community and other property as separate—the property acquired after marriage by the spouses. We have, for convenience of expression, employed the terms "entity" and "legal entity" in referring to a partnership and to a marital community. However, we have never held that a partnership or a marital community is a legal person separate and apart from the members composing the partnership or community, or that either the partnership or the marital community has the status of a corporation.
>
> . . . The legislature, in defining community property, §§ 6890-6906, Rem. Stat., did not change the relationship of husband and wife to the status of a corporation or declare that the property acquired during marriage was owned by a legal personality distinct from the spouses composing the community. In the community property each of the spouses has an undivided one-half interest.
>
> . . . For the purpose of classification merely, and to keep it distinct in legal contemplation, separate from community rights and obligations, community property between husband and wife is sometimes, by a legal fiction, treated as a distinct legal entity constituting the center of certain defined rights and obligations. But strictly speaking it is not a legal entity." 31 C. J., p. 9.

*See also United States v. Overman,* 424 F.2d 1142 (9th Cir. 1970) (spouses own an equal, present, and vested undivided half interest in the couple's community property in Washington); *In re Estate of Towey,* 22 Wn.2d 212, 218, 155

P.2d 273 (1945) ("vested" property right; "owned by both spouses equally"). *See generally* H. Marsh, *Marital Property in Conflict of Laws* 23–24 (1952).

The logical basis for the exemption of community property from separate tort liabilities (*i.e.,* that the entity and not the spouses owned the property) has thus been eroded. Without the entity theory the question becomes why property owned by a person should be exempt from tort judgments. We can see no sufficient reason, given the harm which results therefrom.

Certainly statutory law does not support this exemption. Rather, it lends implicit support to the position we take here. The only statute dealing with recovery from a married tort–feasor, RCW 26.16.190, provides that the *separate property* of a spouse who is not the active tort–feasor is immune from recovery "except in cases where there would be joint responsibility if the marriage did not exist." Since this statute concerns separate property only, it does not necessarily immunize the nontort–feasor spouse's one–half interest in community property. It certainly cannot be read to immunize the tort–feasor's one–half interest in the community property.

Further, the historical background of community property does not support this exemption. Our system of community property evolved from the Spanish law, and although Spanish statutes are in no way binding upon us, they may at times aid in making difficult decisions. *In re Estate of Salvini,* 65 Wn.2d 442, 447, 397 P.2d 811 (1964). Spanish law allowed tort victims of married persons to recover from the wrongdoer's one–half interest in the community property. Novisma Recopilacion, 1805 A.D., Book 10, Title 4, De los Bienes Ganaciales o Adquiridos en el Matrimonio, Law 10 quoted at 2 W. deFuniak, *Community Property,* 20 app. I (1943). *See* W. deFuniak & M. Vaughn, *Community Property* § 181 (2d ed. 1971).

As we see it, the best rule for dealing with tort recoveries from married persons is one which will impose liability on the community when a tort is done for the community's

benefit, protect the property of the innocent spouse if the tort was separate, and at the same time allow recovery by the victim of a solvent tort–feasor. Our present concept of the law fulfills none of these goals. Innocent spouses' interests in community property are made liable upon the most tenuous considerations of "benefit" by the community in order to allow victims to recover; when this cannot be done the tort–feasor is often granted complete immunity. The system which we now establish balances these competing legal and societal considerations. It is supported logically, historically, and by fairness.

The system which we now consider is a combination of the better features of those employed by other community property states. New Mexico has allowed recovery from the tort–feasor's half interest in community property for over 30 years with no apparent problems, *McDonald v. Senn,* 53 N.M. 198, 204 P.2d 990 (1949); N.M. Stat. Ann. § 40–3–10 (1978). California imposes liability first upon community property when the tortious act is for the benefit of the community, and first upon separate property if the tort was separate, but allows recovery from the other category of property once the property primarily liable is exhausted. Cal. Civ. Code § 5122 (West Supp. 1980). In Louisiana a separate or community obligation may be initially satisfied out of either the offending spouse's separate property or community property, but there is a statutory right of reimbursement. La. Civ. Code Ann., arts. 2345, 2364, 2365 (West Supp. 1980). *See generally* Lay, *Tort Liability of Community Property,* 13 Wayne L. Rev. 706, 720 (1967).

Torts which can properly be said to be done in the management of community business, or for the benefit of the community, will remain community torts with the community and the tort–feasor separately liable. It may be that some torts which have in the past been classified as community (possibly as a result of "significant emotional factors or overtones" as suggested by Justice Finley's dissent in *Smith v. Retallick,* 48 Wn.2d 360, 365, 293 P.2d 745 (1956)) may now be properly considered separate.

■ For torts not in the management of community business or for its benefit, such as the tort in the present case, the separate property of the tort–feasor should be primarily liable. If there is insufficient separate property, however, then the tort–feasor's half interest in community personal property shall first become liable, RCW 6.04.040(1),[2] subject of course to the exemptions in RCW Title 6, Enforcement of Judgments. Since it is undisputed that the defendant in this case owns sufficient personal property held as community property to satisfy the liability in this case, we need decide no more.[3]

■ The question then arises how we characterize that which remains of what was formerly community property. The logical answer to this, especially with the prevalence of community property agreements, is that the property remains community. The nontort–feasor spouse will be protected however. If community property is used to satisfy a separate judgment, there will arise a right to reimbursement protected by an equitable lien, the same as in other cases where community property is used to improve a separate estate. *See, e.g., In re Marriage of Harshman,* 18 Wn. App. 116, 567 P.2d 667 (1977), where the community was given a right of reimbursement when community funds were used to pay the principal on a separate mortgage. *See generally* Cross, at 776–82. Due to this equitable lien, upon termination of the community relationship the nontort–feasor spouse will hold as separate property the same amount as he or she would have received if the separate

[2]RCW 6.04.040 reads in pertinent part:

"(1) If the execution be against the property of the judgment debtor it shall require the officer to satisfy the judgment, with interest, out of the personal property of the debtor, and if sufficient personal property cannot be found, out of his real property upon which the judgment is a lien."

[3]It is not necessary and we do not decide here anything concerning separate *debts.* Distinction can be made between debts and torts, and it is not necessary that the rules regarding them be parallel. *See generally* Note, *Tort Debts Versus Contract Debts: Liability of the Community Under California's New Community Property Laws,* 26 Hastings L.J. 1575, 1577–80 (1975).

tort judgment had not been satisfied out of community property.[4] This equitable lien will also protect the community pro tanto from subsequent separate judgment creditors attempting to levy on the remaining half of the property.

▪ Respondent suggests that we should follow the rule of stare decisis, and that if the rule exempting community property is to be changed it should be done by the legislature. However, as this court stated in *Schramm v. Steele,* 97 Wash. 309, 166 P. 634 (1917) at page 318 (which we now expressly overrule):

> "Much as we respect the principle of *stare decisis,* we cannot yield to it when to yield is to overthrow principle and do injustice. Reluctant as we are to depart from former decisions we cannot yield to them, if, in yielding, we perpetuate error and sacrifice principle. We have thought it wisest to overrule outright rather than to evade, as is often done, by an attempt to distinguish where distinction there is none." *Paul v. Davis,* 100 Ind. 422, 428 [(1884)].

*See also Freehe v. Freehe,* 81 Wn.2d 183, 192, 500 P.2d 771 (1972) (abolishing interspousal tort immunity); *Francis v. Francis,* 89 Wn.2d 511, 516–17, 573 P.2d 369 (1978) (overruling cases concerning designation of nonspouse as beneficiary of one half of the proceeds of life insurance policy). Once again it is appropriate to echo the words quoted in *Borst v. Borst,* 41 Wn.2d 642, 657, 251 P.2d 149 (1952):

> "Legislative action there could, of course, be, but we abdicate our own function, in a field peculiarly nonstatutory, when we refuse to reconsider an old and unsatisfactory court–made rule." [*Woods v. Lancet,* 303 N.Y. 349, 102 N.E.2d 691 (1951).]

Plaintiff is therefore entitled to recover from defendant's one–half interest in his community personal property. It is so ordered.

ROSELLINI, DOLLIVER, HICKS, and WILLIAMS, JJ., and HAMILTON, J. Pro Tem., concur.

---

[4] We must leave for another case the exact manner in which the community will be reimbursed by the wrongdoer since that issue is not before us here.

248

Horowitz, J. (dissenting)—I dissent from the majority's imposition of liability for the separate tort of one spouse upon the property of the marital community. The extension of community liability is inconsistent with the concept of community property in this state and further is unjustified and unwise without explicit statutory authority.

I

In interpreting the law of community property in this state, we deal with an undefined concept:

> [T]he exact nature of a community has been somewhat less than crystal clear. . . . The community, like the Kingdom of Heaven, is "like unto" a number of things (see Matthew 13:24–33), but seems to defy precise definition.

*Household Fin. Corp. v. Smith,* 70 Wn.2d 401, 403, 423 P.2d 621 (1967). However, an examination of our cases concerning the nature and disposition of community property interest demonstrates with "crystal clarity" that the majority's conclusions today are inconsistent with the protection of the marital community implicit in the concept of community property.

Each spouse in a marriage has an undivided half interest in each item of community property, *In re Estate of Patton,* 6 Wn. App. 464, 494 P.2d 238 (1972), a property right in the community property equal to that of the other spouse. *In re Estate of Towey,* 22 Wn.2d 212, 155 P.2d 273 (1945).

It is on the basis that community property is thus "owned" by the spouses that the majority concludes that there is "no sufficient reason" for the rule that community property should not be liable for the separate torts[5] of a spouse. Majority opinion, at 244. *See also McDonald v.*

---

[5]The majority's extensive review of cases in this state establishing the "separate" or "community" nature of a spouse's tort seems superfluous. The conclusions reached by the majority will not eliminate the need for this analysis, since torts incurred "in the management of community business or for its benefit," majority opinion at page 246, will subject *all* of the community property to liability. Although these cases may lack a consistency of analysis, that is immaterial to

*Senn,* 53 N.M. 198, 204 P.2d 990 (1949) (reasoning that because the spouses' interests in community property are vested, there is no legal impediment to segregation and execution upon the tort–feasor spouse's community property interest).

This analysis confuses the concept of ownership with the availability of property for immediate possessory satisfaction of a tort judgment. The two do not go hand in hand. For instance, a future interest, such as a noncontingent remainder interest after an existing life estate is vested, the remainderman "owns" the future interest. The property is not, however, subject to immediate and total possession or sale for payment of a tort judgment against the remainderman. Although the vested interest can be sold or otherwise encumbered, the remainderman's creditor is not entitled to immediate possession because of the life tenant's interest. *See McKenna v. Seattle–First Nat'l Bank,* 35 Wn.2d 662, 214 P.2d 664, 16 A.L.R.2d 679 (1950). Just as in this example the life tenant's interest is not impaired by allowing immediate sale and possession on the remainder that will become a fee simple after the life tenant's estate expires, the undivided interest of the innocent spouse in the *whole* of the marital community's property should prevent encroachment upon the community property to pay the other spouse's separate tort debt.

The majority's holding effectively treats community property as a mere species of common law cotenancy, when it is in fact a type of property ownership intrinsically part of, dependent upon and overtly protective of the marital relationship. RCW 26.16.030; *In re Estate of Olson,* 87 Wn.2d 855, 557 P.2d 302 (1976); *Poole v. Schrichte,* 39 Wn.2d 558, 236 P.2d 1044 (1951). Implicit in the majority's analysis is the conclusion that, because each spouse owns a portion of the community property, the property can be partitioned and removed from the community at the will of

the case at bar since there has been no challenge to the separate nature of Mr. Jacobsen's tort against plaintiff.

one spouse or involuntarily on the behest of the separate creditor of one spouse.

This is inconsistent with a long line of cases preventing one spouse from making a gift of community property for noncommunity purposes. *See, e.g., Nimey v. Nimey,* 182 Wash. 194, 45 P.2d 949 (1935) (purported gift of community property made by one spouse void); *Potlatch No. 1 Fed. Credit Union v. Kennedy,* 76 Wn.2d 806, 459 P.2d 32 (1969) (spouse not empowered to encumber community property for purposes not in community interest). Because the concept and existence of community property depends on the marital relationship, it is only the end of that relationship—through dissolution or death—or the agreement of *both spouses* that their property, or a portion of it, will not be community that provides an opportunity for partition of the spouses' otherwise indivisible interests in the community property.

Indicative of the unique nature of ownership of community property is the fact that it need not be divided in precise "halves" at dissolution. RCW 26.09.080; *In re Marriage of Hadley,* 88 Wn.2d 649, 565 P.2d 790 (1977). In fact, so protective are the courts of this state of the concept of community property that a separate property agreement must be proved by clear and convincing evidence. *State v. Miller,* 32 Wn.2d 149, 201 P.2d 136 (1948). A separate property agreement will not be enforced by the courts if it believes it to be unfair, *Hamlin v. Merlino,* 44 Wn.2d 851, 272 P.2d 125 (1954), or upon relatively slight evidence that the separate property agreement has not been strictly observed by both parties. *Kolmorgan v. Schaller,* 51 Wn.2d 94, 316 P.2d 111, 67 A.L.R.2d 704 (1957).

Marriage is essential to the characterization of property as community in nature, and marriage itself raises the presumption that property acquired by the spouses is community. RCW 26.16.030; *Poole v. Schrichte, supra;* Cross, *The Community Property Law in Washington,* 49 Wash. L. Rev. 729, 746 (1974). Former spouses become tenants in

common in property owned as community property during marriage *only* when their marriage is dissolved without disposing of the property, *Yeats v. Estate of Yeats,* 90 Wn.2d 201, 580 P.2d 617 (1978), thus demonstrating the unique nature of the community property system.

Community property, enjoying such a protected position in our scheme of marital community ownership, cannot be subjected to the individual spouse's separate debt simply because it in some sense "belongs" to him:

> The interest of the respective spouses in community property is separate and distinct from the separate estate of each. . . .
>
> Neither the husband nor the wife can alienate or convey his or her interest in community real estate during the lifetime of the community, and, *if neither of them has the right to sell or convey to any third person, creditors have no greater right.*

(Citations omitted. Italics mine.) *Stafford v. Stafford,* 10 Wn.2d 649, 651, 117 P.2d 753 (1941).

I therefore object to the majority's extension of separate liability to community property, not only because the majority's analysis in itself unfairly subjects community property to a separate tort debt, but because it must be based on a reasoning that could eventually eviscerate the concept of community property as a superior form of marital property ownership enjoyed by the people of this state. Under the majority's analysis, there is no reason why this concept of individual ownership of a portion of the marital community's property cannot be extended to separate contract debts, to encumbrances intended for noncommunity benefits, and finally to gratuitous transfers. Only by complying in a consistent manner with the indivisible nature of community property in this instance can we insure that the community property concept will not become merely another form of common law cotenancy, partitionable, at will or involuntarily, with no regard for the marital relationship itself.

## II

Even if the majority's holding could be justified as a rule of community property law consistent with the present scope of that property scheme, it is a change which should be accomplished by the legislature and not the courts. There is no statutory authority in this state for the step taken by the court today, but the statutes regarding community property clearly contemplate a system in which community property is not, generally, subject to separate liability:

> Community real estate shall be subject . . . to liens of *judgments recovered for community debts . . .*

(Italics mine.) RCW 26.16.040.

> Neither husband or wife is liable . . . for the separate debts of the other . . .

RCW 26.16.200.[6] The legislature has specifically provided for the liability of community property for separate debts in some instances, *see* RCW 26.16.200, often after the courts of this state have justifiably refused to extend liability in the absence of statutory authority. *Smyser v. Smyser,* 17 Wn.2d 301, 135 P.2d 455 (1943). *See also National Bank of Commerce v. Green,* 1 Wn. App. 713, 721, 463 P.2d 187 (1969) (ruling that RCW 26.16.200's extension of community property liability for separate debts must apply prospectively only because "[t]he statute adds to the burdens of and pro tanto alters community property, changing one of its characteristic incidents . . ."). The decision to impose additional liability on community property is one of public policy, involving many substantive and procedural questions that cannot be properly considered by the courts in one opinion or a series of opinions. It would be far better left to the legislature.

---

[6]The statute continues in a manner that leaves unclear the type of property of "husband or wife" contemplated in the statute by stating "nor is the rent or income of the *separate* property of either liable for the separate debts of the other . . ." (Italics mine.) Our court has not had an opportunity to decide whether this language limits the more general provisions quoted in the text of this opinion.

Consider the following example of a few of the problems that will be created by the majority's decision: Under the "item" theory, in which the spouses hold undivided half interests in *each item* of community property, will the separate tort debt be recoverable only out of the liable spouse's "half" of each item of community property? *See Collins v. Collins,* 152 Wash. 499, 278 P. 186 (1929); *In re Estate of Patton,* 6 Wn. App. 464, 494 P.2d 238 (1972). How, procedurally, could levy against half of an item of community property be accomplished? Under the present laws, nothing would prevent the judgment creditor from levying against the liable spouse's half interest, to the extent not otherwise exempt, in a community automobile or residence, or in community furniture or appliances. RCW 6.04.060; 6.12-.050; 6.16.020. If the community is to retain the use of these items, the innocent spouse's interest in this and other community property will obviously be impaired because the community, and through it the innocent spouse, will be forced to buy back the "hostage" items with other community assets in which the innocent spouse has a half interest.

Other problems also arise: should the liability of half of the community property for a separate debt be extended to *contractual* debts? The analysis used by the majority might suggest such a result, yet the legislature could consider policy justifications for preventing the use of community property to satisfy a separate contract debt, and consequently provide for that result by statute. In addition, how are trial judges to determine when half of the community property has been subjected to levy for payment of a spouse's separate debt? There is no statutory procedure for "tallying up" and dividing community property for payment of a civil judgment.

In fact, the plaintiff's difficulties in recovering her separate tort judgment from the liable husband in this case might have been avoided had this court not provided for nonstatutory community property agreements without due regard for the consequences of such changes in the characterization of marital partners' property. Sixty years ago, in

*Volz v. Zang,* 113 Wash. 378, 194 P. 409 (1920), this court approved the device of a contract between spouses to convert all their property, existing at the time of agreement, acquired thereafter, or both, to community property. We have been dealing with the impact of case law approval of such community property agreements, on both the spouses entering into such a contract and on interested third parties and creditors, in a catch–as–catch–can basis ever since. *See, e.g., Norris v. Norris,* 95 Wn.2d 124, 622 P.2d 816 (1980); *Berol v. Berol,* 37 Wn.2d 380, 223 P.2d 1055 (1950); *Neely v. Lockton,* 63 Wn.2d 929, 389 P.2d 909 (1964); *Leroux v. Knoll,* 28 Wn.2d 964, 184 P.2d 564 (1947); *In re Estate of Verbeek,* 2 Wn. App. 144, 467 P.2d 178 (1970). The majority in this case acknowledges that a community property agreement between Mr. and Mrs. Jacobsen left Mr. Jacobsen with no separate property to satisfy plaintiff's tort judgment. Majority opinion, at 238–39. The plaintiff in this case has not argued that the agreement should not apply to prevent a separate judgment creditor from levying against property that was separate in nature prior to execution of a community property agreement. Had the concepts first set forth in *Volz* been established by statute, however, the legislature could have anticipated and provided for problems of separate creditors created by *Volz* such as that demonstrated by this case.

The issues raised here would be better suited for legislative examination and action on the basis of a study and recommendations made by experts in this field. The legislature has often benefited from the advice of a formal commission or informal group of persons, knowledgeable in the subject matter on which legislation is proposed, who can provide a consistent statutory scheme that fully contemplates and provides for potential difficulties in a way that cannot be accomplished in a single opinion. Such a legislative endeavor is noted in *Green River Community College Dist. 10 v. Higher Educ. Personnel Bd.,* 95 Wn.2d 108, 622 P.2d 826 (1980). *See also* Cross, *Equality for Spouses in Washington Community Property Law—1972 Statutory*

*Changes,* 48 Wash. L. Rev. 527 n.2 (1973), noting the comprehensive suggestions of the Citizens' Advisory Council on the Status of Women that apparently led to the statutory changes ending discrimination against women in many areas of the law. If such a reform is thought necessary, the legislature can more thoroughly deal with all the difficulties such a major change in the policies of community property law will entail.

Legislation is the route that has been taken in all but one of the community property states that actually subject part or all of the community property to the separate tort of one spouse. Tex. Fam. Code § 5.61 (1969); *Lawrence v. Hardy,* 583 S.W.2d 795 (Tex. Civ. App. 1978) (community liability for separate tort incurred only because of cited statute); La. Civ. Code Ann. arts. 2345, 2364, 2365 (West Supp. 1980) (overruling, among other cases, *Walker v. Fontenot,* 329 So. 2d 762 (La. App. 1976) (no community liability for spouse's tort not occurring while on community business); Cal. Civ. Code § 5122 (West Supp. 1980) (overruling cases). Only the New Mexico court has extended community liability for separate torts without statutory authority, *McDonald v. Senn, supra,* and that was not accomplished without some concern as to the decision's effect. *See* Clark, *New Mexico Community Property Law: The Senate Interim Committee Report,* 15 La. L. Rev. 571 (1954).

It is interesting that the *McDonald* court itself, after a review of community property in other states, believed that the result would be different under the community property law of Washington:

> The concepts of community property as determined by the great courts of Washington and California, in construing substantially identical statutes, are fundamentally different.

*McDonald v. Senn,* 53 N.M. 198, 212, 204 P.2d 990, 998 (1949). The rule in California was subsequently changed by statute. *McDonald* itself was the decision of only three judges. Two judges of the New Mexico Supreme Court dissented, and two other judges did not participate in the case.

All other community property jurisdictions, relying on analyses of the nature of marital community property, extend tort liability to the community only when a spouse's tort can properly be considered community in nature. *Hansen v. Blevins,* 84 Idaho 49, 367 P.2d 758 (1962); *Barnes v. Vozack,* 113 Ariz. 269, 550 P.2d 1070 (1976); *Schilling v. Embree,* 118 Ariz. 236, 239, 575 P.2d 1262, 1265 (1978) (relying on statute to define "[l]iability of the community property for separate debts", there being "nothing in the statute from which to infer the legislature intended otherwise with respect to other liabilities"):

> To the contrary, we believe the manifest purpose of the statute [similar to RCW 26.16.200] was to prevent avoidance of existing obligations by the voluntary act of marriage, and that it does not affect liability of the community property for separate obligations of any kind incurred thereafter.

We should not allow community property to be liable for separate tort debts without statutory authority. Only the legislature can adequately consider the policy decisions necessitated and deal with all the procedural difficulties entailed in such a massive change in the "characteristic incidents" of community property. *National Bank of Commerce v. Green, supra* at 721.

I therefore respectfully dissent.

UTTER, C.J., and BRACHTENBACH, J., concur with HOROWITZ, J.

Reconsideration denied February 26, 1981.